8136

CITY OF CHESTER v. NATIONAL SURETY CO.

1. CONTRACTS—SURETY.—From the correspondence here the Court finds the obligee of the surety bond did not extend the time within which the contract was to have been completed.

2. IBID.—TIME.—Whether time is of the essence of a contract is ordinarily determined by the construction of the contract according to the law applicable. Here it is held that time is of the essence of the contract, to the extent that the work should be completed in the time specified.

3. IBID.—IBID.—WAIVER.—There was no evidence in this case tending to show waiver of the time limit in the contract. The appearance of the time within which the contract should be completed in the specifications alone is sufficient, where the specifications are adopted as a part of the contract by its terms.

4. IBID.—SURETY.—The obligee of a surety bond is not required to notify the obligor of the default of its principal in performing a work within the contract time until the expiration of the time for performance.

5. VERDICT.—The Court should direct a verdict where there is but one reasonable inference to be drawn from the evidence.

Before ERNEST MOORE, special Judge, Chester. Affirmed.

Action by City of Chester against National Surety Company. Defendant appeals.

*Messrs. Butler & Hall,* for appellant.

*Mr. J. C. McLure,* contra.

No arguments furnished Reporter.

March 13, 1912. The opinion of the Court was delivered by

MR. JUSTICE HYDRICK. This action was brought on the bond given by defendant as surety for the performance of a contract made by the Greer Filter Manufacturing Company

2—91

with the plaintiff to install a filter plant in connection with the plaintiff's system of waterworks. The contract provides that the filter plant shall "be built in strict accordance with the city engineer's specifications hereto attached * * * and according to all the conditions and guarantees as set forth in said specifications." The specifications provide that the successful bidder "must agree to complete the work within six weeks after the date when he has been notified by the city that the filter building is complete and the foundations are ready." The bond provides that if the principal shall default in the performance of the contract according to its terms, or shall abandon the work, "the obligee shall immediately notify the company," and thereafter the company shall have the right to assume and sublet the contract. The contract and bond were executed in August, 1909. On March 1; 1910, the filter manufacturing company wrote the city engineer asking for some definite information as to when they could go to work, saying that it would take "about three weeks to complete the plant and get it ready to run." On March 3d, the city engineer replied, "we will be ready for you to start the filter installation on March 15th." On March 17th, he telegraphed the manufacturing company: "Filter building ready. When can you start installation? Answer mail." On March 18th, the company answered: "We will not be ready to start work at the city of Chester before April 1st. We have been delayed so many times in the delivery of our material that we stopped all our orders, until we had definite information that you would be ready for us. It will probably require another week for the material to all be assembled in the shops, and a week for delivery. We trust this will not inconvenience you whatever, and assure you that we will be on hand at that time." On March 21st, the city engineer wrote the company: "We note that you will commence the installation of the filters on April 1st, and beg to advise that same will be satisfactory to us." On April 5th, the company wrote the city engineer

that it had discovered that it would be nearly May 1st before the material for the work could be gotten ready. On April 7th, the city engineer replied: "Filter plant must be completed according to contract, which is six weeks after notification that building is ready. April 1st is date set by you, and agreed to by this city, as date of notification." On April 13th, the company replied: "We will endeavor to ship the remainder of the material necessary to complete your work promptly, and will try to have the work completed by May 15th." On April 28th, the company wrote that it would be between May 15th and June 1st before the material could be assembled at Chester, and asked that the time for completion of the contract be extended thirty days from June 1st. On April 30th, the mayor of Chester replied, declining to grant the extension, and saying that the city would expect the contract to be completed on May 15th. On the same day (April 30th), the city attorney notified defendant of the "impending default," stating the facts, and that the city would look to defendant for the completion of the contract according to its terms, and hold defendant responsible for all damages resulting from the failure to so complete it. On May 14th, the city attorney gave defendant formal notice that the manufacturing company had defaulted in the performance of the contract, that the time limit had expired, and the company had done no work at all on the filter plant, and asked whether defendant intended to assume the contract and carry it out. After some further correspondence, both sides reserving their rights, the defendant declined to assume the contract. The Court directed a verdict for plaintiff for the damages proved, about which there was no dispute.

Appellant correctly states the issues raised by the appeal as follows: "1. Whether the surety is discharged by extension of time of performance of the contract without its knowledge or consent; 2. Whether time was of the essence of the contract; and if so, was there a waiver of same; 3.

Whether immediate notice was given to the surety of the default of the principal obligor, as provided in the contract; and, from these considerations; 4. Whether the Circuit Judge erred in refusing to grant a nonsuit and in directing a verdict, taking from the jury the questions of fact involved."

In answering the first issue, the first question is: Was there any extension of time? For, obviously, if there was no extension of time, the question whether defendant was discharged thereby, does not arise. We cannot accept appellant's contention that the telegram of March 17th definitely fixed the time from which the six weeks provided in the contract for the completion of the work should begin to run. The testimony shows that several letters had previously passed between the city engineer and the filter manufacturing company relative to the time when the filter building would be completed. The company was apparently seeking this information for its own benefit and convenience in determining when to order the materials for the plant to be shipped. By the terms of the contract, the time did not begin to run, until the city gave notice that the filter building was complete and the foundations were ready. The question asked in the telegram of March 17th, "when can you start installation?" shows clearly that that telegram was not intended, and the answer shows equally clearly that it was not accepted, as the notice required by the contract to fix the time from which the six weeks should begin to run. The letter of the company of March 18th, and the reply of the city of March 21st, definitely fixed that time as April 1st, and the correspondence shows that it was so understood and acted upon afterwards by both parties to the contract. There was no extension of that time by the city.

Whether time is of the essence of a contract is ordinarily to be determined by the construction of the contract in the light of the settled principles of law upon that subject. As

in all other questions of construction, the intention of the parties should prevail, and it should be ascertained, if it can be, from the language which they have used, which may be read in the light of the character and purpose of the contract and the facts and circumstances under which it was made, and the construction put upon it by the parties themselves. Applying these principles to the construction of this contract, it is clear that the parties intended that time should be of the essence of it,—at least to the extent of making the principal and surety responsible for all damages occurring to the city by reason of the failure of the principal to perform the contract within the time limit agreed upon, and to that extent alone, did the Circuit Judge hold that time was of the essence of it.

The next question is: Was there a waiver by the city of the time limit provision of the contract? Appellant contends that such a waiver must be implied from the failure to insert the provision with regard to the time in the body of the contract, instead of adopting it by a mere reference to the specifications. The same might be said of any other provision of the specifications. The agreement to perform the contract according to the specifications adopted the several provisions of the specifications as effectually as if each had been written into the contract itself. In fact, the specifications were adopted as the contract—they specified it. So far from waiving the provisions as to time, the evidence shows that compliance with it was persistently insisted upon.

The condition of the bond that "the obligee shall immediately so notify" the defendant of its principal's default was strictly and literally complied with. Appellant is mistaken in supposing that the city was under obligation to notify the surety of any default, until the time limit had expired; because the principal had every moment of that time to perform the contract, and until that time had elapsed, the contract being still unperformed, there was no

default. Nevertheless, as soon as the city ascertained from its correspondence with the filter manufacturing company that it could not or would not complete the work within the time limit agreed upon, it notified the defendant of the "impending default," notwithstanding the principal still had two weeks to complete the job; and on the very day that the default actually occurred—that is, the day that the time limit expired,—the contract being still unperformed,—the defendant was notified of the default.

There was no issue as to any matter of fact—at least as to any fact about which more than one reasonable inference could be drawn. Therefore, the Court properly directed the verdict.

Judgment affirmed.

*Only* MR. CHIEF JUSTICE GARY *and* MR. JUSTICE WOODS *participate in this opinion and concur.*