## 8967

PALMETTO FERTILIZER CO. v. COLUMBIA, N. & L. R. R. CO. *ET AL.*

(83 S. E. 36.)

CARRIERS OF GOODS.  BILLS OF LADING.  NOTICE.  EVIDENCE.  PRESUMPTIONS.  PLEADINGS.  NEW TRIAL.  ISSUES.  VERDICT.

1. NEW TRIAL—EFFECT.—In an action against three defendants, where a verdict against one of the three and in favor of the other two was set aside as to all parties, the cause was in the same condition that it was before trial, and upon retrial the two defendants, who were successful, could not claim the benefit of the verdict.

2. TRIAL—INSTRUCTIONS—APPLICABILITY TO PLEADINGS.—In an action for shortage in a shipment of cottonseed meal brought against the seller and the two carriers, where one of the paragraphs of the complaint set up the initial carrier's contention, also set up in its answer that the full quantity of meal had not been placed in the car by the shipper, it was error for the Court to instruct that he did not see how they could find against the seller under the pleadings, as the issues are made up from the entire pleadings.

3. TRIAL—SPECIAL VERDICT—FAILURE TO ANSWER.—Under Code Civ. Proc., sec. 321, providing that the Court may require the jury to find upon particular questions of fact, and section 322 providing that the special verdict shall govern in case of conflict with the general verdict, it is improper, where special questions have been submitted, to permit the jury, which stated that they could not agree on a special verdict, to return a general verdict, for that casts. doubt upon the logical sequence of the general verdict.

4. CARRIERS—CARRIAGE OF GOODS—BILLS OF LADING—EFFECT.—An initial carrier is estopped, as against an innocent purchaser of goods shipped, to deny that the shipment did not include all the goods called for by the bill of lading.

5. CARRIERS—CARRIAGE OF GOODS—BILLS OF LADING.—Between the consignor of goods and the receiving carrier, recitals in a bill of lading as to the goods shipped raise only a rebuttable presumption that such goods were delivered for shipment.

6. CARRIERS—CARRIAGE OF GOODS—BILLS . OF LADING—"S. L. & C."—Where a bill of lading for a car shipment of cottonseed meal, showed on its face a memorandum "S. L. & C.," meaning that the bags were loaded and counted only by the consignor, and the car then sealed by the initial carrier, the initial carrier is not, as against a purchaser of the meal, who paid a draft for the purchase price with the bill of lading attached, estopped to deny that the car never contained the number of bags recited in the bill, although the bill is *prima facie* evidence of that fact.

7. TRIAL—DIRECTED VERDICT—JURY QUESTION.—A verdict should not be directed where more than one reasonable inference can be drawn from the testimony.

Before F. B. GARY, J., Columbia, May, 1913.    Reversed.

Action originally brought by Palmetto Fertilizer Company against Columbia, Newberry and Laurens Railroad

FOOTNOTE.—See note as to union of special with general verdict in 24 L. R. A. (N. S.) 64-72, and as to when the special verdict is to control, see note in 6 L. R. A. 574. As to rights against carrier of discounter of draft as to property covered by bill of lading attached to draft, see 49 L. R. A. (N. S.) 651.

Company, to which the Southern Railway Company and the Little Mountain Oil Mill and Fertilizer Company were made parties defendant, by amendment under order of Court, on the ground, that a complete determination of the rights of the parties could not be had without their presence. The first trial was had in April, 1913, before Judge Sease, and a jury, when a verdict in the sum of $420 was found against the Little Mountain Oil Mill and Fertilizer Company. The second trial before Judge F. B. Gary, and a jury, resulted in a verdict for the same amount against the Columbia, Newberry and Laurens Railroad Company.

That company appeals on the following exceptions:

1. Because upon the opening of the case on the second trial thereof his Honor should have ruled that the verdict rendered on the first trial thereof exonerated this defendant from any liability in the cause, and that no motion having been made on behalf of the plaintiff to set aside said verdict, it still remained of binding force, and should have granted this defendant's motion discharging it from further answering or responsibility in the case.

2. Because his Honor should have ruled on this defendant's motion for the direction of a verdict that the evidence was capable of only one inference, and that was that the car in question had been delivered to this defendant under seals put thereon by the Little Mountain Oil Mill and Fertilizer Company, and that it had been promptly transported and delivered in the same condition to the Southern Railway Company, at the request of the plaintiff, and the receipt in writing of the Southern Railway Company for such car so delivered having been produced and offered in evidence, this defendant was relieved from further accountability or liability for the contents of said car, and the motion for a direction of the verdict should have been granted.

3. Because his Honor, the presiding Judge, having instructed the jury upon the request of this defendant to

find a special verdict in the shape of answers to the issues submitted by him to them in connection with their general verdict, it was error for him to allow the jury to render a general verdict without the rendering of the special verdict so ordered and the answering of the questions so submitted to them.

4. Because the statement made by the jury in open Court to the Court and entered of record on the proceedings of the Court, that they were unable to agree upon the answers to the questions so submitted to them for their special verdict was record evidence that they could not agree upon the facts essential to be determined for the finding of their general verdict, and shows that such verdict was capricious and uncertain, and the motion for a new trial should have been granted on that ground.

5. Because his Honor should have held, upon the motion for a new trial, that the Court having ordered the complaint to be amended so as to bring in as a party defendant the Little Mountain Oil Mill and Fertilizer Company, with an allegation that the C., N. & L. R. R. Co. claimed that the car in which the cottonseed meal referred to in the complaint was loaded, was closed and fastened by the Little Mountain Oil Mill and Fertilizer Company, and when transported was delivered to the Southern Railway Company to be delivered in the condition in which it was received from the Little Mountain Oil Mill and Fertilizer Company, and that said defendant, Columbia, Newberry and Laurens Railroad Company, claimed that the loss, if any, occurred before the delivery of said car to it, or after the said car had been delivered to the said Southern Railway Company, and said defendant, Columbia, Newberry and Laurens Railroad Company, having by its answer to said amended complaint stated affirmatively said claim and demanded that it be indemnified from said action, his Honor, the presiding Judge, should have considered the question as *res adjudicata* as to the sufficiency of the allegations of said

pleadings of said defendant, Little Mountain Oil Mill and Fertilizer Company, and should not of his own motion have instructed the jury they could not find against said defendant.

6. Because his Honor, the presiding Judge, upon request of this defendant, should have charged the jury as follows, to wit:

"1. The bill of lading introduced in this case is in such form as was required by section 2175 of volume I of the Code of 1912 to be issued to the shipper upon its demand, and, as the shipment concerned was a carload lot, the initials 'S. L. & C.' being written across the face of the bill of lading which are shown to have been known by the president of the plaintiff company to mean 'Shipper's load and count' and to indicate that the car was taken by the railroad company sealed and without actual knowledge as to the contents of the car—the burden of proving the contents of the car, as against the defendant, Columbia, Newberry and Laurens Railroad Company, is on the plaintiff, and if the jury find, from the preponderance of the testimony, that at the time of the delivery of the car to the Columbia, Newberry and Laurens Railroad Company for transportation it contained only the number of sacks of cottonseed meal which it contained when the car was delivered to the plaintiff company, they must find for the defendant, Columbia, Newberry and Laurens Railroad Company."

7. Because, upon the request of this defendant, his Honor should have charged the jury as follows, to wit:

"2. Even if the jury find, from the preponderance of the testimony, that the car in question contained the five hundred sacks of cottonseed meal when it was delivered to the defendant, Columbia, Newberry and Laurens Railroad Company, for transportation to Columbia, as there is no affirmative evidence of a change of the condition of the car and that any part of the cottonseed meal had been taken from the car before the delivery to the Southern Railway

Company, the law presumes that the condition remained the same and that it still contained the same number of sacks and was sealed with the seals of the Little Mountain agency of the defendant, Columbia, Newberry and Laurens Railroad Company, at the time of the delivery; and under section 2176 of volume I of the Code of Laws of South Carolina for 1902, the paper introduced in evidence by the defendant, Columbia, Newberry and Laurens Railroad Company, showing the delivery of the car to the Southern Railway Company on the 5th of March, 1911, is a sufficient discharge of the Columbia, Newberry and Laurens Railroad Company from liability, and the jury must find for that company, and the only question would then be between the plaintiff and the Southern Railway Company."

8. Because his Honor charged the jury as follows, to wit: "Now, at the outset, gentlemen, I desire—I take the responsibility and it is not on you—but inasmuch as the pleadings here do not accuse the Little Mountain Oil Mill Company of any wrongdoing, but on the contrary it alleges that it turned over the true amount, I do not see how you can find any verdict against the Little Mountain Oil Mill Company. Now, they may have failed to put them in there; but the complaint says that it did. The complaint in this case does not accuse the Little Mountain Oil Mill Company of any wrong whatever. And the pleadings not making any issue of that kind, I do not see how you can give any verdict against that company."

The error being that his Honor thereby dismissed the Little Mountain Oil Mill and Fertilizer Company from the case, notwithstanding the fact that an order of the Court had been previously made directing said defendant to be brought in upon amended pleadings alleging the facts which were set out in the amended complaint in this case, and notwithstanding the fact that this defendant had set up in its answer the facts which clearly demand the presence of the said Little Mountain Oil Mill and Fertilizer Company as

a party defendant to said cause, and had served the said answer upon the said Little Mountain Oil Mill and Fertilizer Company, indicating that it had a cross demand upon it.

9. Because his Honor charged the jury as follows, to wit:

"The question then arises as to whether or not the railroads are responsible. Well, gentlemen, I charge you that where a railroad issues its bill of lading specifying that it has received a certain number of packages for shipment and a transferee or assignee acting upon the recitals in that bill of lading is damaged when the recitals turn out to be not as they are contained in the paper, the railroad that issued that bill of lading would not be heard to say that they are not true.

"Now, there is no question here that the Columbia, Newberry and Laurens Railroad, it is not questioned by anybody that it issued this bill of lading, and it is not questioned that it was sent with draft attached to plaintiff, and it is not questioned, as I understand, that the plaintiff thereafter accepted the draft.

"Now, if he accepted that draft relying upon the recitals in the bill of lading, then the company that issued it would not be heard to say: It is true we issued a bill of lading for five hundred sacks of meal, but we did not get but three hundred  It is not in a position to say that. It has put it in the power of an innocent person to be injured; and the law says that it will not be heard to say that it did not get the number. Now, then, it would be bound by the recitals in that bill of lading, whether they are true or not. That railroad and all connecting carriers acting or acquiescing in that bill of lading, will not be heard to say that the recitals in it are not true. And they would be bound by it.

"Now, if you find that the Columbia, Newberry and Laurens Railroad issued this bill of lading and recited in it had received five hundred sacks of meal from the Little Mountain Oil Mill Company and that relying upon the recitals in it the plaintiff had suffered damage, why it would

13—99

be responsible whether it received the full number of sacks or not.    As I have just told you, it would not be heard to say that it did not receive the full number."

The error being that it instructed the jury, notwithstanding the fact that the bill of lading had across its face the initials "S. L. & C," which were known to the plaintiff's agents to indicate that the car was loaded, counted and sealed by the shippers: The defendant, having issued the bill of lading, was estopped in denying that it contained five hundred sacks; and, second, that nothwithstanding the fact that said car had been delivered by this defendant in the same apparent condition in which it was received, to the Southern Railway Company for transportation to plaintiff's warehouse, and notwithstanding a written receipt of the Southern Railway Company for such car when so delivered was produced in evidence on the trial, that this defendant would still remain liable therefor.

*Messrs. Lyles & Lyles,* for appellant, submit: *The first verdict was binding on plaintiff, unless set aside as to the C., N. & L. R. R. Co.    No such motion was made by plaintiff, or did the C., N. & L. R. R. Co. participate in hearing of motion made by the Little Mountain O. M. & F. Co., or become bound by it.    As to sixth and ninth exceptions,* cite: 85 S. C. 537, 538; 105 Am. St. Rep. 322; 94 S. C. 212; 77 S. E. 797; 6 Cyc. 418.    *Liability of connecting carrier receipting to initial carrier for goods:* Civil Code 1912, secs. 3275, 3276; 33 S. C. 359; 43 S. C. 461; 77 S. C. 480; 88 S. C. 172; 68 S. C. 417.    *Order making Little Mtn. Oil Mill Co. party res judicata.    Special findings necessary to sustain verdict:* Code Civil Proc., secs. 321, 322.

*Messrs. Rembert & Monteith,* for Little Mountain Oil Mill & Fertilizer Co., respondents, cite: *As to liability of carrier issuing bill of lading:* 85 S. C. 537.    *Question as to*

*rights of C., N. & L. R. R. Co. against Little Mtn. O. M. & F. Co., do not rise on record:* 94 S. C. 325; 95 S. C. 4.

*Messrs. Weston & Aycock,* for Palmetto Fertilizer Co., respondent, cite: 85 S. C. 537; 89 S. C. 415.

*Messrs. B. L. Abney* and *E. M. Thomson,* for Southern Railway Co., respondent, submit: *Southern Railway Company received car as a switch line, under Code of 1902, sec. 2112, and not as connecting carrier. Effect of setting aside first verdict:* 73 S. C. 181. *Liability of initial carrier issuing bill of lading:* 85 S. C. 537; 89 S. C. 415.

October 9, 1914.

The opinion of the Court was delivered by MR. JUSTICE GAGE.

There is at issue 300 bags of cottonseed meal, worth $420.00.

A lot of meal was manufactured by Little Mountain Oil Mill and Fertilizer Company, and shipped by it to the plaintiff at Columbia.

Little Mountain is a station on the Columbia, Newberry and Laurens Railroad, betwixt Newberry and Columbia. The car was loaded on the 3d March, 1911; reached Columbia 5th March, and was delivered to plaintiff 8th March.

The shipment runs over the lines of the C., N. & L. Railroad to Columbia, and thence for 150 yards over the terminals of the Southern Railway to the plaintiff.

The plaintiff bought of and paid the Little Mountain Company for 500 bags; but when the meal came to plaintiff's hands it contends there were only 200 bags in the car.

The first issue of fact is, did the Little Mountain Company put 500 bags in the car?

And the second issue of fact is, if 500 bags were so put, were 300 bags taken out the car while the car was in the hands of the C., N. & L. Railroad Company, or while it was in the hands of the Southern Railway Company, or

were they taken out at all before the car got into plaintiff's hands?

There have been two trials already before juries. At the first trial the jury found for the plaintiff against the Little Mountain Company.

The trial Judge set that verdict aside as to all the parties.

At the second trial the three issues above stated were, in effect, submitted to the jury, towit:

1. Were there five hundred sacks of cottonseed meal in the car in question at the time that it was sealed at Little Mountain and delivered to the Columbia, Newberry & Laurens Railroad Company for transportation to the city of Columbia?

2. If you answer "Yes" to the preceding question, were the five hundred sacks of cottonseed meal still in the car in question when it was turned over to the Southern Railway Company to be transported to the warehouse of the Palmetto Fertilizer Company?

3. If you answer "Yes" to both of the preceding questions, then were the five hundred sacks of cottonseed meal still in the car in question when it was delivered to the Palmetto Fertilizer Company by the Southern Railroad?

The jury reported its inability to find upon the issues, and instead returned a general verdict for the plaintiff against C., N. & L. Railroad Company for $420.00.

This appeal is by the Columbia, Newberry & Laurens Railroad Company upon nine exceptions.

But the exceptions make only a few pregnant issues which ought to be decided. The exceptions will not be much considered in detail, or in numerical order, but in logical order.

The appellant's first exception is not sound. It is true that upon the first trial the jury acquitted both carriers and convicted the consignor; but the Court set aside the verdict "as to all the parties in the action." The effect of that order was plainly to put the cause just where it was before trial.

The eighth exception is sound.  The Court practically instructed the jury that it must acquit the consignor, and upon the ground that the complaint alleged that the consignor had delivered to the carrier the full quota of meal.  The third paragraph of the complaint did so allege; but the eighth paragraph alleged the contention of the C., N. & L. Railroad Company; and that company by answer put in issue all the three questions submitted to the jury.  The issues are made up by the entire pleadings, and it was a pregnant issue in the cause whether the consignor ever put full 500 bags in the car, one upon which a jury in the first trial found against the consignor.

It is true the Court submitted that issue to the jury; but after the Court had instructed the jury, "I do not see how you can find any verdict against the Little Mountain Oil Mill Company."

The third exception involves a question of practice.  It is sound.  The plaintiff first sued the C., N. & L. Railroad Company for the price of 300 sacks of cottonseed meal.  That company suggested by motion that it in fact never received the full five hundred sacks, and that if it did, another carrier last had possession of the car before delivery.

Two new parties, the consignor and the terminal carrier, were brought in that these issues might be decided.  They answered.

The law provides: "In all cases" the Court may instruct the jury "to find upon particular questions of fact."  Code of Procedure, sec. 321; *Manson* v. *Dempsey,* 88 S. C. 193, 70 S. E. 610.

The special verdict is the premise; the general verdict is the conclusion; the former controls the latter if the two shall be inconsistent.  Code Civil Proc., sec. 322.

In our opinion, therefore, when the Court had, of right, ordered a special verdict, and in a case of peculiar need for such a verdict, the jury ought to have been required to find

the special verdict; and the refusal to do so cast doubt upon the logical sequence of the general verdict.

The fourth exception is but an inference to be drawn from the truth of the third.

The fifth exception is but a restatement of the eighth.

The ninth exception is sound.   It is true that as against a plaintiff who is an innocent purchaser the initial carrier is estopped to say the car did not contain that which the bill of lading unequivocally recites to be its contents.   *Thomas* v. *R. R.*, 85 S. C. 539, 64 S. E. 220, 67 S. E. 908, 34 L. R. A. (N. S.) 1177, 21 A. and E. Ann. Cases 223.

But as between the consignor and a receiving carrier, the fact must outweigh the recital.

The consignor cannot conclusively prevail against the receiving carrier for five hundred sacks simply because the bill of lading recited five hundred sacks.   The bill of lading raises, in the consignor's favor, the presumption that the car did have five hundred sacks; but the carrier may show the truth against the writing and against the presumption.   *Phos. Co. v. Fert. Co.*, 94 S. C. 212, 77 S. E. 1012.

The plaintiff here, though, is not the consignor; it paid the consignor's draft against 500 sacks, to which draft there was attached a bill of lading made and issued under the circumstances herein recited.   The question now is, did the peculiar bill of lading in this case at all modify the rights of the plaintiff, consignee?

The consignor accepted a bill of lading which did not contain an unequivocal admission of the contents of the car.   That paper recites that there were 500 bags in the car; but there was marked upon its face a plain warning in the letters "S. L. & C."   These characters are well understood by all parties, and especially by the plaintiff.   They in effect mean, that the Little Mountain Oil Mill and Fertilizer Company, called sometimes the shipper and sometimes the

consignor, had loaded the car and counted the bags; the practice was encouraged and approved by the business public; the car thus loaded was sealed up by the consignor, with the initial carrier's seal, and left thus standing on the consignor's sidetrack.

When the bill of lading went attached to the draft and was presented to the plaintiff, it carried notice to the plaintiff how the car was loaded.

Under these circumstances the carrier is not estopped to deny to the plaintiff consignee that there were 500 sacks in the car; it never aforetime admitted that, expressly or impliedly, except by counsel in the progress of the trial; it has not misled the plaintiff.

But the recital of the bill of lading, that the car had 500 sacks of meal in it, must carry some meaning, even though the consignor counted the sacks.

The recital is *prima facie* evidence of the stated contents.

But if the plaintiff makes the contrary to appear, to wit, that the car had only 200 sacks when it reached its terminus, then the consignor must prove that 500 sacks were in fact loaded in the car.

Counsel for the plaintiff have cited no case in the Courts of this State determinative of the issue; but they have cited 2 Cyc. 418, and *National Bank of Bristol* v. *B. & O. R. R. Co.,* 99 Md. 661, 59 Atl. 134, 105 Amer. State Reports 354, which sustain this view.   The instructions of the Court was against the initial carrier on the effect of this bill of lading; and was against the law.

The remaining two exceptions, two and seven, involve the right of the appellant to a direction of a verdict in its favor.   They are unsound.

The testimony tends to show: The meal was put into the car on 3d March; the car was moved off the sidetrack on to the appellant's line on 3d March; the car was hauled away on towards Columbia on 4th March; the car reached Columbia 5th March, and on same day was delivered to

Southern Railway Company, and by that company delivered to consignee on 8th or 9th March; that the seals first impressed on 2d March were intact up to the 8th or 9th, when the car was opened by consignee and the shortage discovered.

The rule is that a verdict should be directed where only one reasonable inference can be drawn from the testimony. *Chester* v. *Surety Co.*, 91 S. C. 17, 74 S. E. 37.

It is sufficient to say, a reasonable inference might be drawn from the testimony, other than that the car was unmolested from 3d to 5th March, both inclusive.

The judgment below is set aside, and a new trial is ordered to be had pursuant to the rules herein laid down.