14336

CUBBAGE v. ROOS ET AL.

(186 S. E., 794)

Before RAMAGE J., Sumter, October, 1935.

*McLeod & Shore* and *Shepard K. Nash,* for appellant,

*Messrs. Herbert & Dial* and *Epps & Epps,* for respondents,

July 16, 1936.

The opinion of the Court was delivered by MR. JUSTICE BAKER.

This case grew out of an automobile accident which occurred within the twenty-mile speed limit at or near Dalzell, S. C., a small unincorporated town between Camden and Sumter, on a paved highway.

The respondent David I. Roos is a traveling salesman representing Rice-Stix Dry Goods Company, Inc., also a respondent, and resides at Sumter. As a means of transportation, Roos used a Chevrolet automobile, driven by a Negro chauffeur. On the evening of January 4, 1935, at about 6:30 o'clock, while returning to Sumter from Camden, and in passing through Dalzell, the Chevrolet automobile, driven by either the Negro chauffeur or Roos, struck and fatally injured Clarence D. Cubbage, Jr., a child eight years of age; said child dying about twelve hours after being struck and injured.

Thereafter, C. D. Cubbage, as administrator of the estate of Clarence D. Cubbage, Jr., deceased, commenced an action

in the Court of Common Pleas for Sumter County, under Lord Campbell's Act, asking both actual and punitive damages for the alleged wrongful death of Clarence D. Cubbage, Jr., and upon a trial of the case, a verdict was rendered in favor of said administrator, the appellant herein, and against David I. Roos and Rice-Stix Dry Goods Company, Inc., the respondents herein, in the sum of $7,000.00 actual damages and $4,500.00 punitive damages. At the close of the testimony, respondents moved for a directed verdict as to both actual and punitive damages. The motion was refused, the trial Judge making the following statement: "I am clear as to the actual damages, and as to punitive damages, I am going to submit that, but I am frank to tell the attorneys for the plaintiff, there is some doubt about that in my mind."

Respondents made a motion for a new trial, which was marked, "Heard," and subsequently argued in Columbia, S. C. Thereafterwards, on February 18, 1936, the trial Judge passed his order whereby he granted a new trial unless the appellant should, within ten days from the filing of the order, remit on the record so much of the verdict as applies to punitive damages, and further providing that if appellant should satisfy the verdict as to punitive damages, then the respondents' motion for a new trial, in so far as the same related to actual damages, should be refused. In passing upon the motion, the trial Judge had this to say: "At the time of the trial I expressed grave doubt as to whether or not the issue of punitive damages should be submitted to the jury, and upon reflection I think this is a case which does not justify any verdict of punitive damages against the defendants."

From the order granting a new trial *nisi*, an appeal is taken to this Court, on the following exceptions:

"His Honor, the Trial Judge was in error, as a matter of law, it is respectfully submitted, in granting a new trial *nisi*, there being evidence to submit to the jury on the question of willful, wanton and reckless conduct of the defend-

ants in the operation of the automobile at the time and place Clarence D. Cubbage, Jr., was killed.

"His Honor was in error, as a matter of law, in granting a new trial unless the plaintiff remitted all of the punitive damages awarded by the jury, the error being that there being sufficient evidence to go to the jury on the question of willfulness, recklessness and wantonness of the defendants in the operation of the automobile which killed the said Clarence D. Cubbage, Jr., the effect of the trial Judge's order granting the new trial *nisi* was to direct a verdict against the plaintiff on the issue of punitive damages.

"His Honor erred, as a matter of law, it is respectfully submitted, in passing his Order granting a new trial unless the plaintiff remitted all of the punitive damages awarded by the jury, the effect of said Order being that the Circuit Judge held that there was no evidence to submit to the jury on the question of punitive damages, whereas the evidence showed that the defendants in the operation of the automobile at the time and place the same struck and killed Clarence D. Cubbage, Jr., were guilty of a conscious violation of the law and were otherwise reckless, wanton and willful in the operation of said car."

Appellant states in printed brief that the foregoing exceptions raise the one issue or question: "Was the Trial Judge in error in granting a new trial unless the plaintiff (appellant) remitted all punitive damages awarded by the jury, where there was sufficient evidence to submit this issue to the jury?" And the respondents state in their printed brief that they adopt the form of question framed by the appellant. More properly, the question is: "Was the Trial Judge, under the testimony adduced upon the trial of the case, as a matter of law, required to submit the issue of recklessness, willfulness or wantonness to the jury?" The conclusion of the Court will be based upon the same law as if appellant (the plaintiff) were appealing from the refusal of the trial Judge upon the trial of the case to submit to the jury the

question of willfulness and recklessness, and had directed a verdict for respondents (defendants) as to punitive damages.

In passing upon this question, it becomes necessary to discuss the facts, and ordinarily the facts should be first discussed, and then the law applicable; but we will treat this case in inverse order.

The case of *Mack v. Life & Casualty Ins. Co.,* 171 S. C., 350, 172 S. E., 305, 306, held that if the trial Judge should have refused to direct a verdict as to punitive damages, then upon a verdict by the jury for punitive damages in addition to actual damages, it was error of law for the trial Judge, upon motion for a new trial, to grant the motion *nisi* conditioned upon the plaintiff remitting all of the punitive damages awarded, as this was tantamount to a holding by the trial Judge that as to such damages, he should have directed a verdict for the defendant. In reversing the order granting a new trial *nisi,* the Court, through Mr. Associate Justice Stabler, now Chief Justice, had the following to say with reference to the testimony: "But we are of opinion, and so hold, that the court properly refused to direct the verdict. The evidence, as disclosed by an examination of the record, was in conflict as to the alleged 'fraudulent cancellation' of the policy by the defendant, and unquestionably made an issue of fact for the jury, who, if they believed what the insured and her witness declared to be true, were undoubtedly justified in giving the plaintiff, as they did, both actual and punitive damages in some amount. There was testimony tending to show that the insured had not been given credit by the company for premiums paid, and that entries of such payments were not properly made—and at times not made at all—in her receipt book; that she was old and ignorant and trusted the agent of the defendant to do the right thing; and that, when the premiums were tendered at the office of the company, while the policy was still in force and effect, it refused to accept them. It is true that these charges were

sharply contradicted by the defendant, but the credibility of the witnesses and the sufficiency of the testimony were matters for the jury."

It will therefore be seen that not in every instance is it reversible error for the trial Judge to grant a new trial *nisi* conditioned upon a remittance upon the record of *all* punitive damages awarded by the jury, but only in such cases where it would have been error of law to have directed a verdict as to punitive damages.

The case of *Ralls v. Saleeby,* 178 S. C., 431, 182 S. E., 750, cited by appellant, came to this Court on appeal from an order overruling a demurrer to the complaint on the ground that it did not state facts sufficient to constitute a cause of action under the guest statute. Of course, for the purpose of demurring, the allegations of the complaint were admitted, and one of the allegations of the complaint was that the defendant's truck was operated, at the time and place of the injury to plaintiff's intestate, at a high, dangerous, and reckless rate of speed, in violation of the statutes of the State of South Carolina regulating the speed of motor vehicles on the highway. The complaint also alleged that the operation on the highway of the truck was in 'a careless, negligent, and reckless manner, and in wanton and willful disregard of the rights of plaintiff, etc.

In affirming the order overruling the demurrer, the Court held that the violation of express legislative command or prohibition is not only negligence *per se,* but is *sufficient* to warrant an inference of recklessness, willfulness, or wantonness, and therefore *sufficient* to carry that issue to the jury under proper instructions, citing as authority therefor *Callison v. Charleston & W. C. R. Co.,* 106 S. C., 123, 90 S. E., 260, 262, and quoted from that case the paragraph hereinafter discussed. Also cited and quoted from was the case of *Ford v. Atlantic C. L. R. R. Co. et al.,* 169 S. C., 41, 168 S. E., 143.

It will be noted, however, that none of these cases hold that the mere violation of a statute requires the submission of an issue of willfulness, recklessness, or wantonness to be submitted to the jury, where the only reasonable inference to be drawn from all of the testimony is that there was no recklessness, willfulness, or wantonness; this being expressly held in the *Callison case,* although at one place the word "require" is used.

The paragraph in the case of *Callison v. Charleston & W. C. Ry. Co., supra,* to which we desire to direct attention, is as follows: "The failure of a railroad company to give the signals required by statute at a public crossing is negligence *per se;* moreover, it is sufficient to warrant a reasonable inference of recklessness, willfulness, or wantonness, and therefore sufficient to carry that issue to the jury. No doubt, in some instances, it may be the result of mere inadvertence; if so, it would be negligence only; but, when the positive command or prohibition of a statute is violated or disobeyed, it is deemed sufficient to require submission to the jury of the question whether, under all the circumstances, it was the result of mere inadvertence, or of indifference to the rights of those who travel the highways, or a conscious failure to be careful for their safety. The reason upon which the rule is based is that, when anything is commanded or prohibited by legislative authority, every one is conclusively presumed to know it and is bound to act accordingly, and, the matter having been brought to his attention in such a solemn and impressive way, his violation. or disobedience cannot be entirely excused, and therefore it amounts, at the least, to negligence; and, while it may be negligence only, it is also enough to warrant a reasonable inference that it was due to indifference to the command or prohibition, or to a conscious disregard thereof, and of the rights of those intended to be safeguarded thereby. True, the facts and circumstances may repel such an inference, but it is for the jury to decide whether they do or not, unless the evidence is susceptible of but one inference."

It will be seen that at one place in the above-quoted paragraph it is stated that the violation of the statute "is sufficient to warrant a reasonable inference of recklessness, willfulness, or wantonness, and therefore *sufficient* to carry that issue to the jury." At another place in the paragraph it is stated that the violation of the statute "is deemed sufficient to *require* submission to the jury of the question whether, under all the circumstances, it was the result of mere inadvertence, or of indifference to the rights of those who travel the highways, or a conscious failure to be careful for their safety." Later on in the same paragraph it is stated, "and, while it may be negligence only, it is also enough to warrant a reasonable inference that it was due to indifference to the command or prohibition, or to a conscious disregard thereof, and of the rights of those intended to be safeguarded thereby." And then comes this most significant statement: "True, the facts and circumstances may repel such an inference, but it is for the jury to decide whether they do or not, *unless the evidence is susceptible of but one inference*" (Italics added). In view of this concluding statement to the paragraph, it would appear that the writer of the opinion in the *Callison case* meant to say that the violation of a statute justifies a trial Judge in submitting an issue of willfulness, recklessness, and wantonness to a jury where the facts and circumstances of the case do not so negative the inference of recklessness, willfulness, and wantonness created by a violation of the statute law; but that where the only reasonable inference to be drawn from all of the testimony is that it was simple negligence and not such gross negligence as to amount in law to recklessness, willfulness, or wantonness, then the trial or Circuit Judge could refuse to submit such issue to the jury by directing a verdict as to the cause of action based on recklessness, willfulness, and wantonness.

This Court has not held that the mere violation of the letter of a statute in and of itself requires the Circuit Judge to submit an issue of recklessness, willfulness, or wanton-

ness where the evidence shows that the spirit of the statute was being complied with, and the only reasonable inference from all the testimony is that such violation of the statute did not in fact amount to a reckless, willful, or wanton act.

In the case of *Ford v. Atlantic C. L. R. R. Co.*, 169 S. C., 41, 168 S. E., 143, 159, with reference to the violation of a statute, the Court stated as a brief recapitulation of the conclusions under former decisions the following: "(1) That a neglect to give the prescribed statutory signals is negligence *per se;* (2) that such failure, * * * is not recklessness, wilfulness, or wantonness *per se,* but only affords the basis of an inference sufficient to carry the case, under proper instructions, to the jury for its determination of the question."

In no case called to our attention has the Court held that the trial Judge is powerless to direct a verdict as to punitive damages, or more properly speaking, peremptorily instruct the jury that it cannot award punitive damages, even though the letter of some statute has not been observed. To so hold would overrule the well-recognized principle that if only one reasonable inference can be deduced from the evidence, it becomes a question of law for the Court, and not a question of fact for the jury. See *National Bank v. Barrett, Jr., & Co.*, 173 S. C., 1, 174 S. E., 581, and cited in *Turner v. American Motorists Ins. Co.*, 176 S. C., 260, 180 S. E., 55.

In *Turner v. American Motorists Ins. Co., supra,* there is cited the cases of *City of Chester v. National Surety Co.*, 91 S. C., 17, 74 S. E., 37; and *Bushardt v. United Investment Co.*, 121 S. C., 324, 113 S. E., 637, 35 A. L. R., 637. Quoted from the Chester case is the following: "There was no issue as to any matter of fact—*at least as to any fact about which more than one reasonable inference could be drawn. Therefore, the Court properly directed the verdict."* (Italics added.)

From the *Bushardt case,* the following: "Under the well-settled rule if only one reasonable or legitimate inference

can be drawn from the evidence, the question is one of law for the Court."

In the comparatively recent case of *Lawson v. Duncan,* 173 S. C., 34, 174 S. E., 495, 498, Mr. Justice Carter, writing the opinion of the Court, stated: "In regard to the contention of the appellant, that in granting the new trial, the court was controlled by the theory that any violation of a statute is evidence of willfulness (or creates a presumption of willfulness), and that such willfulness is the presumptive proximate cause of injury, we wish to state we do not so construe the language used by his honor in said order. Whether the violation of a statute, in such cases, is evidence of willfulness, is a fact or issue to be considered in connection with all of the other facts and circumstances surrounding the case, and if more than one inference can reasonably be drawn from the testimony in the case on this issue, it is, of course, a matter for the jury to determine."

We shall now undertake to discuss the facts as briefly as possible, and apply the law as has hereinabove and as has heretofore been defined and declared by this Court.

The respondent Roos, the representative of his co-respondent, Rice-Stix Dry Goods Company, Inc., was returning to his home in Sumter, S. C., from Camden, S. C., and was riding in a Chevrolet automobile, in which he was accustomed to travel. He was driving the automobile, or it was being driven by his chauffeur, a Negro man by the name of Mose Peters. It makes no material difference which one was in the actual operation of the automobile, since Peters was employed by Roos to drive the car, and Roos had the authority to direct the operation thereof. When the automobile reached the suburbs of Dalzell, a small unincorporated town traversed by the paved highway connecting Camden and Sumter, and upon seeing a highway sign reading, "Speed limit 20 miles per hour," the driver of the car slowed it down to 35 miles from 45 miles per hour. The father of the deceased testified that the respondent Roos stated to him that he slowed the car to

about 35 miles per hour. We have stated the highest rate of speed permitted by the evidence. From the highway sign to the approximate point where appellant's intestate was struck by the automobile is 630 feet, a few feet more than the average city block. The highway through Dalzell apparently runs more east and west than north and south, although there is testimony both ways. We assume that northwesterly and southeasterly would be nearer correct. The first houses or residences reached after entering the 20-mile speed limit traveling from Camden and towards Sumter are the residences of appellant, C. D. Cubbage, on the left of the highway, and R. L. Burkett on the right, except for a residence setting back some distance from the highway. The Cubbage and Burkett residences are almost opposite, the Burkett house being a few feet towards Sumter. Appellant's intestate, a boy of the age of eight years and a few months, had been sent over to the Burkett home and was returning to his father's home when struck by the automobile of respondents as he was undertaking to cross the highway. It is approximately 100 yards and slightly downgrade from the place of the accident to a filling station and the stores in the town—the business section of the town. The first blood spot on the pavement was three feet from the edge of the pavement on the left-hand side going towards Sumter, and there were other spots of blood on the pavement, the last and largest one being 81 feet from a point on the highway opposite the center of a bridge leading from the Burkett home to and across the highway. The first and second blood spots were 50 feet apart, the others six feet apart. Appellant described the condition of the automobile when he saw it at some time after the accident, as follows: "A. Well, the left light was bent back, the glass broken out, and then the iron part of it was bent back. The iron stand of the headlight, I don't know about the stand, but the top of the light seemed to have been knocked back." And then in reply to a question as to the condition of the glass in the left light, answered, "shattered." The car did not come to a stop until

about 1½ to 2½ car lengths towards Sumter from the point appellant's intestate was picked up, and on the right-hand side of the road, with two wheels off the pavement. It was a clear night and dark enough for lights on the car, and the lights were on. The body of young Cubbage was badly mangled. The testimony of Cubbage, Sr., is that Roos stated to him he went so far past the body after it fell off the car, he thought he would never find it (the distance as testified to at the trial was 1½ to 2½ car lengths) ; that he saw the boy standing on the bridge leading from the Burkett home and thought the boy was going to stand still, but that suddenly he dashed across the highway and in front of the automobile.

We have undertaken to set forth above the physical facts and circumstances surrounding the sad accident, as gathered from the testimony, and will now discuss the facts in connection with other testimony, in the main, on the part of respondents.

Before reaching Dalzell the car of respondents was being driven at from 40 to 45 miles per hour, and it might be well at this point to refer to the apparent conflict in the testimony as to who was actually driving the car. We think that there can be no other reasonable inference drawn from all of the testimony than that the car was being driven by Mose Peters, the chauffeur of Roos, and that Roos at no time intentionally misled any one into the belief that he (Roos) was the driver at the time of the accident. Upon reaching the 20-mile speed limit sign, the speed of the car was slowed to from 25 to 35 miles per hour, evidencing that respondents were complying with the spirit, if not the letter, of the law, for it must be borne in mind that the automobile was being driven on a regulation paved highway in a sparsely settled portion of the town on a straightaway road. If the respondent Roos had driven, or permitted the car to be driven, at from 25 to 35 miles per hour through the business section, it would have manifested an inclination on his part to ignore

the statute. There was no reason to expect that a child or person or anything else would suddenly undertake to dash from one side of the highway to the other and in front of the moving vehicle displaying headlights. Mose Peters, the driver of the car, testified he did not see the deceased until he was in front of the car, and he stopped as soon as he could. The respondent, as has hereinbefore set forth, saw the deceased on the bridge in front of the Burkett house, standing still, and thought he was going to remain there instead of trying to run across the highway in front of the moving automobile. The child entered the highway from the right-hand side in the direction in which the car was being driven, and it was a most natural instinct for the driver of the car to swerve or guide the car away from the child, and hence the hitting of the child on the left of the highway. We cannot say that the fact that the car traveled 116 feet before being brought to a stop after hitting the child is of any great probative value, because momentarily the average person would probably be paralyzed into inaction by the shock of the terrible tragedy, and certainly could not be held to the same expertness in the handling and stoppage of the automobile as under normal and less terrifying and horrible circumstances. It appears to us that the statement accredited to the respondent Roos, "that he ran so far past him (the child lying on the highway) he thought he would never find the child when he went back to hunt for him," the actual distance being at most 2½ car lengths, instead of evidencing recklessness, willfulness, wantonness, or maliciousness on his part, evidenced the exact opposite, and showed his great concern and distress. The evidence discloses that Roos, after showing the proper consideration for the family of the child by making certain they knew what had occurred, and that he was taking the child to a hospital, proceeded to rush the child there, and again by seeking the family of the child following the death, and freely discussing the circumstances of the tragedy with them, and it is admitted that Roos appeared on all occasions to be distressed on account thereof.

Appellant appears to lay stress on testimony of his witness Mrs. A. M. Cubbage that while the respondent Roos was talking to her about the accident at the home of the father of the child who had been killed, a brother of the dead boy stated to Roos, "You either didn't use your brakes or you were driving mighty fast to knock my little brother eighty feet down the road," when Roos said nothing in reply. Under the circumstances, we cannot say that any conclusion could be drawn from the silence of Roos other than that he did not deem it proper to then and there enter into a discussion or argument with this brother, especially when all of the physical evidence pointed to but one conclusion— that the body of the child remained on the automobile from the instant of the collision until he fell off 80 feet from the point hit.

On cross examination, after the respondent Roos had testified that the car was being driven at approximately thirty miles per hour, this testimony followed:

"Q. Well, you knew you were violating the law if you were running thirty miles an hour? A. Yes, sir.

"Q. Well, you did it? A. Yes, sir; we all do it.

"Q. And—well, were you doing it or not? A. Yes, sir.

"Q. And knowingly doing so? A. Yes, sir."

On redirect examination, and on this point, the following is the testimony:

"Q. Mr. Roos, I want to be fair, and I assume counsel does. I want to know whether or not you intend to say you knew at the time you were violating the law? A. No, sir; I did not.

"Q. Well, just explain— A. If I was going thirty miles an hour—I never looked at the speedometer. I assumed we were going approximately thirty miles an hour, and if I was, I was violating the law. If I was not, I was not violating the law.

"Q. Did I understand you to say you realized at the time you were violating the law? A. No, sir."

With the above as a basis for the position, appellant argues that if it is not actually admitted by the respondent Roos that he was consciously violating the law, it made a question of fact necessary to be submitted to the jury, citing *Tinsley v. Western Union Tel. Co.*, 72 S. C., 350, 51 S. E., 913, holding in effect that conscious failure to observe due care constitutes willfulness.

The trial Judge was in a better position than this Court to reach a conclusion as to what the witness intended saying, since he was present and could consider the demeanor of the witness on the stand and the circumstances under which this testimony was elicited. A case very much in point is *Delk v. Liggett & Myers Tobacco Co.* (S. C.), 186 S. E., 383, 387. In that case, the counsel for plaintiff, in his direct examination, asked this question: "When you took this chew of tobacco you bit it off, and bit down on it, and this tack was imbedded in the tobacco?" Answer: "Yes, sir." Upon this testimony it was argued that there was evidence that the tack was "imbedded" in the tobacco. The Court said: "It is true that counsel for respondent asked him if the tack was 'imbedded' in the tobacco, to which he replied in the affirmative; but in view of respondent's testimony just preceding, it cannot be claimed that respondent intended to convey the impression that the tack was so 'imbedded' in the tobacco as to leave an imprint, as in the *Corum case, supra* [205 N. C., 213, 171 S. E., 78], and thus evidence that the tack was in the tobacco before leaving the manufacturer."

In the case at bar, it will be noted, from a reading of the cross examination of respondent Roos, that the word "knowingly" was used by the examining counsel, and while having answered "yes" to the question, is some testimony that this respondent was consciously violating the law, yet this would not preclude the trial Judge from holding, as a matter of law, that the only reasonable inference to be drawn from all of the testimony was that the respondent Roos was

not willfully, recklessly, and wantonly, or consciously in the sense of intentionally, violating the statute.

We have not herein discussed each and every small detail of the testimony, but we have thoroughly considered it, and are of the opinion that it would not have been error for the trial Judge to have refused to submit the issue of punitive damages to the jury.

The order appealed from is affirmed.

Mr. Chief Justice Stabler and Messrs. Justices Bonham and Fishburne concur.

Mr. Justice Carter did not participate.