**In re WILDEWOOD LITIGATION.**

**Bruce K. BENESH, Individually; Susan V. Benesh, Individually; Sharon C. Helms, Individually; Wayne Sharpe; Del A. Rosebrock, Individually; Deborah T. Rosebrock, Individually; David C. Marble; Caron H. Marble, Individually; Ronald L. Taylor; Deanna W. Lanier–Taylor; Salvatore G. Cilella, II, Individually; Mary Winifred Cilella, Individually; Karl V. Doskocil; Mary T. Doskocil; Edward F. Sullivan, Jr., Individually; Eileen B. Sullivan, Individually; Hwa Ja Kim, Individually and as Guardian ad Litem for Soo Yung Kim, a minor under age of 18 years; Duk Yung Kim; Duk Hyun Kim; Duk Jin Kim; Linton S. Boatwright; Harriette M. Boatwright; Gandhi Gondi; Raghava Gondi, Plaintiffs–Appellants,**

**and**

**Bruce K. Benesh and Susan V. Benesh, as Guardians ad Litem for Barbara Grace Benesh, Donna Constance Benesh and John William Benesh, minors under the age of 14 years; James O. Helms, Individually and as Guardian ad Litem for Michael Wayne Helms and James O. Helms, Jr.; Sharon C. Helms, as Guardian ad Litem for Michael Wayne Helms and James O. Helms, Jr.; Del A. Rosebrock and Deborah T. Rosebrock, as Guardians ad Litem for Allyson Rosebrock and Ashley Rosebrock, minors under the age of 14 years; Caron H. Marble, as Guardian ad Litem for Allison Marble, a minor under the age of 18 years; Salvatore G. Cilella, II and Mary Winifred Cilella, as Guardians ad Litem for Peter Cilella, a minor under the age of 18 years; Edward F. Sullivan, Jr. and**

Eileen B. Sullivan, as Guardians ad Litem for Keith Edward Sullivan, a minor under the age of 18 years; Hwa Yung Kim; Christa C. Helms; Salvatore G. Cilella, III; John Melvin Doskocil; Frank Alan Doskocil; Lauren Elizabeth Sullivan, Plaintiffs,

v.

AMPHENOL CORPORATION; Allied Signal, Inc., Defendants–Appellees.

No. 93–2459.

United States Court of Appeals, Fourth Circuit.

Argued May 12, 1994.

Decided April 18, 1995.

ARGUED: James Hanjo Lengel, Holler, Olive, Lengel & Garner, Columbia, SC, for appellants. Charles E. Carpenter, Jr., Richardson, Plowden, Grier & Howser, P.A., Columbia, SC, for appellees. **ON BRIEF:** William R. Applegate, West Columbia, SC; J.C. Coleman, Columbia, SC; Cheryl F. Perkins, Columbia, SC; Russell H. Putnam, Jr., Columbia, SC, for appellants. F. Barron Grier, III, Michael A. Pulliam, Deborah Harrison Sheffield, Richardson, Plowden, Grier & Howser, P.A., Columbia, SC, for appellees.

Before WIDENER, WILKINSON and WILKINS, Circuit Judges.

Affirmed by published opinion. Judge WIDENER wrote the opinion, in which Judges WILKINSON and WILKINS joined.

## OPINION

WIDENER, Circuit Judge:

Appellants (plaintiffs), 11 property owners (the owners), brought suit against Amphenol and Allied Signal, (Amphenol) alleging nuisance, trespass, and negligence for the release by Amphenol's plant of trichloroethane (TCE) into the groundwater in and surrounding the owners' properties. The jury returned a verdict for Amphenol. The owners appeal from the district court's denial of their motions for judgment as a matter of law and for new trial, as well as several other issues. We affirm the district court's judgment in all respects.

Plaintiffs are property owners in the WildeWood subdivision near Columbia, South Carolina, all surrounding a small man-made lake. The subdivision is located at the bottom of a hill on which defendants' predecessor in 1967–68 built and began operating the plant in question. The process engaged in by the plant included the use of TCE, a volatile and evaporative organic chemical. After the TCE was used, it was put into a percolation basin, a depression dug in the ground, and left to evaporate. Amphenol expected that any amounts that did not evaporate would be "bound in the soil" and "would not move to other groundwater systems." This process was used from 1968 to May 1979, and an estimated 352 gallons of TCE were discharged into the pit during this time.

In 1983, Amphenol learned that TCE had entered the groundwater beneath the percolation basin, and by 1986 it was clear that the TCE was migrating in a subterranean plume,[1] in the direction of the subdivision. Between 1988 and 1991, the plaintiffs learned of the TCE plume. The South Carolina Department of Health and Environmental Control (DHEC) installed monitoring wells and posted no swimming signs near a small stream in the subdivision. TCE levels on some of the owners' properties and in the lake fall within a range near or above EPA and DHEC drinking water contamination levels. The drinking water of the plaintiffs, however, is not contaminated by the TCE at issue here.

In June 1971, the Pollution Control Authority (PCA), the predecessor of the DHEC, implemented a regulation prohibiting any waste amenable to treatment or control from being discharged into the waters of the State without such treatment or control. See Rules and Regulations of the Pollution Con-

1. A plume in the sense used here means an area where the groundwater quality has been altered by the addition of a contaminant.

trol Authority, *South Carolina Acts and Joint Resolutions,* 1887 ¶ 3 (1971). Amphenol never treated TCE to alter its chemical composition before releasing it into the percolation basin, and does not deny that TCE is amenable to treatment or control.

The owners produced the testimony of an expert real estate appraiser describing 60% to 80% decreases in the values of the plaintiffs' properties as the result of the TCE plume.

The owners commenced suit against Amphenol on theories of, *inter alia,* negligence, trespass, and nuisance, seeking compensatory and punitive damages. The suits were consolidated for trial. The court excluded evidence proffered by the owners regarding a preliminary remediation plan devised by Amphenol to clean up the TCE in the subdivision. The district court also excluded the owners' expert testimony regarding a certain allegedly comparable sale in the subdivision. Amphenol was permitted over objection to introduce evidence comparing the risks of TCE-contaminated water to the risks of Columbia drinking water generally.

The district court directed verdicts for Amphenol on the nuisance and punitive damages claims, and the negligence and trespass claims were submitted to the jury. During deliberations, the jury requested that the court define the term negligence, and after a hearing, the court gave the jury the definition of simple negligence.

The jury returned verdicts for Amphenol on all claims. The district court denied the owners' motion for judgment as a matter of law or a new trial.

The owners appeal the denial of their post-trial motions, the district court's response to the jury's request for clarification, the directed verdicts on the nuisance and punitive damages claims, and the abovementioned evidentiary determinations. We address these issues in turn.

## I.

There is some dispute as to the appropriate standard of review of the first two issues raised by the owners, whether the owners were entitled to judgment as a matter of law or a new trial on the question of negligence per se. The grant or denial of judgment as a matter of law is reviewed in this circuit *de novo.* *White v. County of Newberry,* 985 F.2d 168, 172 (4th Cir.1993). We must determine whether there is substantial evidence in the record upon which the jury could find for Amphenol. *White,* 985 F.2d at 172. The question is whether a jury, viewing the evidence in the light most favorable to Amphenol, could have properly reached the conclusion reached by this jury. *Austin v. Torrington Co.,* 810 F.2d 416, 420 (4th Cir.), *cert. denied,* 484 U.S. 977, 108 S.Ct. 489, 98 L.Ed.2d 487 (1987). The grant or denial of a new trial is reviewed for abuse of discretion. *Bristol Steel & Iron Works, Inc. v. Bethlehem Steel Corp.,* 41 F.3d 182, 186 (4th Cir.1994).

The claim of negligence per se was given to the jury, which returned a verdict for Amphenol. The district court denied the owners' motion for judgment as a matter of law on the ground that the DHEC regulations at issue did not create a discernible standard of care. Viewing the evidence in the light most favorable to Amphenol, we find that the jury could have found for Amphenol on more than one ground, only one of which was the standard of care issue relied upon by the district court.[2] We hold that

2. There is sufficient evidence in the record from which to conclude that Amphenol did not violate the regulation, because TCE was treated in the percolation basin, in accordance with the standards at the time, before being discharged into the waters of South Carolina. Plaintiffs argue that this is a patently unreasonable reading of the PCA–DHEC regulation. We disagree. At the time that TCE was being discharged into the basin, it was believed that all of it would either dissipate in accordance with its volatile, evaporative nature or bind to the soil and not enter the groundwater. Although it is now clear that some of the waste did, in fact, find its way into the waters of South Carolina, it is just as clear that a reasonable jury could conclude that the percolation basin constituted treatment before such discharge.

We express no opinion on other theories to support the verdict of the jury such as the fact that the articulated purpose of the regulations was the protection of marine and terrestrial life and that so far as property was mentioned, they refer to that in the sense of public property as a resource; that Amphenol could not have fore-

sufficient evidence was presented for a rational jury to conclude that Amphenol was not negligent per se.

Because we find sufficient evidence in the record from which a jury could find Amphenol not negligent per se, we find no abuse of discretion in the denial of the owners' motion for new trial.

## II.

The owners next challenge the district court's amplification of its jury instructions in response to a written request by the jury regarding the definition of negligence. We review the amplification of proper jury instructions for abuse of discretion. *United States v. Bayer,* 331 U.S. 532, 536, 67 S.Ct. 1394, 1396, 91 L.Ed. 1654, *reh'g denied,* 332 U.S. 785, 68 S.Ct. 29, 92 L.Ed. 368 (1947). The district court, upon the jury's request, "we are not totally clear on the term 'negligence.' Could you give any assistance?" and after hearing from both sides, correctly restated the definition of simple negligence. The jury affirmed that this was a satisfactory response. We find no error in this reinstruction, either in the definition given or because the district court responded to the specific request made by the jury.

## III.

The owners next take issue with the directed verdicts to Amphenol on the nuisance claim and the punitive damages demand. We review these questions of law *de novo. Gairola v. Virginia Dep't of Gen. Servs.,* 753 F.2d 1281, 1285 (4th Cir.1985). To uphold the directed verdicts, we must find that there are no facts in the record, in the light most favorable to the owners, from which a reasonable jury could find the existence of either a private nuisance or willful or reckless conduct.

### A.

A private nuisance in South Carolina is a substantial and unreasonable interference with the use and enjoyment of another's property. See, e.g., *Ravan v. Greenville County,* 434 S.E.2d 296, 306 (S.C. Ct.App. 1993). Here, because the TCE levels did not rise to the level of toxicological concern, the owners have presented no evidence that the use and enjoyment of their property was unreasonably interfered with by Amphenol. We hold that the district court properly directed a verdict in favor of Amphenol on the nuisance claim.

### B.

The owners also challenge the district court's removal from the jury of their claims for punitive damages, arguing that causative violation of a statute must be submitted to the jury as evidence of willful or reckless conduct, and citing *Wise v. Broadway,* 433 S.E.2d 857, 859 (S.C.1993), and *Cooper v. County of Florence,* 306 S.C. 408, 412 S.E.2d 417, 418–19 (1991). Even if such a rule might apply here, which is doubtful, because we see no evidence from which a rational jury could find Amphenol to have acted willfully or recklessly, compare *Cooper,* 412 S.E.2d at 418–19, and *Cubbage v. Roos,* 181 S.C. 188, 186 S.E. 794, 796 (1936), with *Wise,* 433 S.E.2d at 859, because the jury returned a verdict for Amphenol on the negligence per se claim, which we have affirmed, the punitive damages issue is moot and the error, if any, is harmless. We hold that the district court committed no reversible error in directing a verdict for Amphenol on the punitive damages issue.

## IV.

The owners allege error in the district court's treatment of witness testimony and other evidence at trial. Such claims as are made here are reviewed for abuse of discretion. Upon a review of the record, we are of opinion there was no abuse of discretion and affirm the district court's decisions as to them.

seen the seepage because the technical belief at the time was that it did not exist; that there was evidence that the highest TCE reading in the subdivision was not dangerous; and that any damage to property values was due to fears and rumors rather than rational anxiety with respect to TCE.

The judgment of the district court is accordingly

*AFFIRMED.*

