16611

VERNON v. ATLANTIC COAST LINE R. CO.

(70 S. E. (2d) 862)

378

Messrs. *W. S. Houck,* of Florence, and *Stevenson & Lindsay* and *Neville Bennett,* of Bennettsville, *for Appellant,* cite:

Messrs *R. D. Miller, N. W. Edens, J. F. Covington, W. C. Goldberg* and *Sidney S. Tison,* all of Bennettsville,

*for Respondent,* cite:

April 2, 1952.

STUKES, Justice.

This action is the same in which decision upon a former appeal is reported in 218 S. C. 402, 63 S. E. (2d) 53, to which reference may be had. It is for damages for injuries to the person and property of plaintiff, medical and hospital expenses, and for the loss to him of the services of his wife. She was riding in the cab of plaintiff's heavily loaded truck and trailer, which he was driving, when in collision with a locomotive of defendant's freight train just within the city limits of Cheraw at about six o'clock in the early morning twilight of January 23, 1946; the engineer on the leader-locomotive of the "double-header" testified that it was dark. Separate action by the wife for damages for her personal injuries was tried in the Federal Court and resulted in verdict and judgment in her favor. Upon trial of the case *sub judice* the jury returned verdict for the plaintiff of $5,000-

.00 actual and $20,000.00 punitive damages. On defendant's motion the trial court reduced the amount of punitive damages to $13,000.00 by order *nisi,* and plaintiff accordingly remitted $7,000.00 of the verdict for puntive damages.

Timely motions were made by defendant in the court below for nonsuit, directed verdict, judgment notwithstanding the verdict and for new trial, all of which were refused except as above stated. During the progress of the trial there was also a motion by defendant for mistrial because of an improper remark by one of the plaintiff's examining counsel, which was likewise denied. Defendant's exception to the latter ruling and some of the other points of the appeal need not be considered because the grounds of them are not apt to occur upon the new trial which will have to be ordered for the reason hereinafter assigned. The questions which arise from the refusal of the trial court to direct verdict generally for the defendant and, separately, in respect to punitive damages, will have to be answered; and for that purpose the evidence will be reviewed, but only to the limited extent which is thought to be necessary for that purpose. Of course, upon a subsequent trial the evidence may not be the same and the conclusions now reached, upon the evidence at the trial under review, may not be applicable to the evidence which will be adduced anew.

At the time of the accident plaintiff was engaged in the business of buying fruits and vegetables where produced and carrying them by motor truck to Winston-Salem, North Carolina, for sale on the market there. His wife accompanied him on a trip to Florida where they purchased a cargo of citrus fruit and left with it at about 9 or 9:30 o'clock on the morning of January 22nd and proceeded with only brief stops for refreshments until the accident. He had used this route numerous times before so was familiar with it, but did not recall previously traveling over the particular railroad crossing at night. He and his wife alternated at driving on this trip and plaintiff had relieved his wife at the wheel

only two or three miles back when he got out and walked around the truck, inspecting the tires.

The highway was the heavily-traveled combined U. S. routes 1 and 52 which plaintiff was traveling northward. He successfully crossed the track of the Seaboard Airline Railroad where there was a crossing signal light and bell which were not operating at the moment because there was no approaching train on that track; however, he saw the sign and slowed to a speed of about fifteen miles per hour, increasing it thereafter to twenty or twenty-five. Less than three hundred feet beyond the Seaboard crossing lies the track of the defendant where the collision occurred. At it was also a warning flasher light which was not operated automatically upon the approach of a train; a signalman in a tower about 275 feet from the crossing in an easterly direction (where defendant's track and that of the Seaboard intersect) had the duty of operating defendant's highway crossing light warning by hand lever in the tower, which threw a switch. (He also operated the signals and apparatus of the railroad intersection.) The railroad track crosses the highway at such an angle that the train came from rather the rear of the motor truck, and from the side opposite that of the driver and was therefore more difficult for him to see. He testified that he looked and listened, particularly at the Seaboard crossing but continued to do so, with both of his cab windows partly open for safety despite the extreme cold, and failed to discover the approach of the train until his truck was about eighteen or twenty feet from the track when the signal light first flashed its warning of danger. He applied his brakes and turned sharply to the left where there was an unpaved road which paralleled the track. However, it was too late and the truck skidded into collision with the engine and was dragged along the track. The truck was so entangled with the locomotive that it was extricated with difficulty by a wrecker. Meanwhile, of course, the train was delayed and the plaintiff and his wife were removed to a hospital in Bennettsville.

The train crew testified in chief for the defense that the statutory crossing signals were given in accord with law. Sec. 8355, Code of 1942. Plaintiff's testimony on direct examination was sufficient to carry the issue to the jury, but he so qualified and weakened it on cross examination that we think perhaps the issue should have been withdrawn from the jury but for relevant admissions of certain of the railroad employee-witnesses, particularly the signal towerman, the section master, who happened to be in the tower, and the engineer of the second of the two locomotives. (The record indicates that the towerman was a Seaboard employee, but he nevertheless had the duty of operating the defendant's crossing flasher light.) Under cross examination plaintiff testified that he did not remember hearing the whistle. When asked whether he told another soon after the accident that he heard the whistle and bell, he said, substantially, that he did not know, but if he had to answer the query, he would say no with respect to whistle and bell. However, upon careful consideration of the entire evidence and viewing it most favorably for plaintiff, as the trial court was also bound to do, we are constrained to conclude that it was not error to submit to the jury the question of whether the crossing signals were given in conformity with the statute.

If the jury found the fact that the statutory crossing signals were not given, plaintiff was not barred from recovery by his simple contributory negligence; it must have been gross or wilful. Code sec. 8377. The degree of his negligence, if any, was, we think, under all of the evidence, also an issue for factual determination by the jury. It cannot be fairly said that it bears only one reasonable inference, one way or the other. Failure to give the signals, if found, gave rise to a rebuttable presumption of its proximate cause of the collision, and was evidence of willfullness and wantonness which would justify an award of punitive damages. *Callison v. Charleston & W. C. Ry. Co.,* 106 S. C. 123, 90 S. E. 260; *McBride v. Atlantic Coast Line R. Co.,*

140 S. C. 260, 138 S. E. 803; *Brogdon v. Northwestern R. Co.,* 141 S. C. 238, 139 S. E. 459; *Ford v. Atlantic Coast Line R. Co.,* 169 S. C. 41, 168 S. E. 143, affirmed 287 U. S. 502, 53 S. Ct. 249, 77 L. Ed. 457; *Jennings v. McCowan,* 215 S. C. 404, 55 S. E. (2d) 522, *certiorari* denied *Atlantic Coast Line R. Co. v. Jennings,* 338 U. S. 956, 70 S. Ct. 494, 94 L. Ed. 590.

The recent case last cited, *Jennings v. McCowan,* was similar to the case in hand in that it was a railroad crossing case in which there was conflicting evidence relating to the giving of the statutory signals and with respect to the warning light. There the issue concerning the light was whether it properly functioned automatically and in time, upon the approach of the train; here it is whether the manual operator of the device failed in the timely performance of his duty. Significantly, we think, he admitted on cross examination that he had so failed·on former occasion or occasions, which indicates willfulness and wantonness. There was a very large verdict for actual and punitive damages in the *Jennings case,* which was affirmed on appeal by a majority of the court. Division arose only concerning the amount of the verdict. The members of the court were unanimous that the issues of actual and punitive damages should have been submitted to the jury, as here.

Some of the railroad crossing cases, cited *supra,* were interestingly reviewed in *Hider v. Gelbach,* 4 Cir., 1943, 135 F. (2d) 693, especially with reference to punitive damages, and they were distinguished from *Cubbage v. Roos,* 181 S. C. 188, 186 S. E. 794. and *Bell v. Atlantic Coast Line R. Co.,* 202 S. C. 160, 24 S. E. (2d) 177. The two latter decisions are heavily relied upon by the defendant in the instant case in its brief on appeal. There is no conflict; primarily, those cases simply came within the concluding words of the following quotation from the discussion of the presumption that arises from the violation of statute, which appears in the opinion by Mr. Justice Hydrick in

*Callison v. Charleston & W. C. Ry. Co., supra,* 106 S. C. at page 129, 90 S. E. at page 262:

"The reason upon which the rule is based is that, when anything is commanded or prohibited by legislative authority, every one is conclusively presumed to know it and is bound to act accordingly, and, the matter having been brought to his attention in such a solemn and impressive way, his violation or disobedience cannot be entirely excused, and therefore it amounts, at the least, to negligence; and, while it may be negligence only, it is also enough to warrant a reasonable inference that it was due to indifference to the command or prohibition, or to a conscious disregard thereof, and of the rights of those intended to be safeguarded thereby. True, the facts and circumstances may repel such an inference, but it is for the jury to decide whether they do or not, *unless the evidence is susceptible of but one inference.*" (Emphasis added.)

The *Cubbage* and *Bell cases* are further soundly distinguishable from the case at bar upon their respective facts. *Cubbage's case* was concerned with a relatively minor violation by a motorist of the maximum speed law which was applicable in a sparsely settled residential section of a village, referred to by the court as the violation of the letter of a statute; and it was found that the evidence established compliance with the spirit of the law, which negatived willfullness and wantonness and excluded the recovery of punitive damages. There was, moreover, no apparent proximate cause relationship between the slight infraction of statute and the injury. We think that this statement amply shows the inapplicability of the precedent of the *Cubbage case* to the failure of the crew of the railroad locomotive (here locomotives) to give the statutory crossing signals and to the failure of the signalman (stationed in the nearby tower for the purpose) to put the crossing warning light into operation until an approaching vehicle, particularly which he sees, or in the exercise of slight care should have seen, is within eighteen or twenty feet of an oncoming train. (Here the

towerman testified that he saw the approaching truck; he said, "It crossed the Seaboard crossing (which was the first reached) very cautiously, and when he got across he continued faster.") *Bell's case* was an action for damages for personal injuries caused by a blow from a flying plank from a crossing, which was evidently loosened and thrown by the movement of a passing train. It was held that the evidence conclusively showed compliance by the railroad company with the terms of the applicable statutes, wherefore there was no evidence of wilfulness or wantonness on that account which would sustain the verdict for punitive damages. It was plainly said that there was nothing in the evidence in that case which tended to prove that there was any previously discoverable defect in the crossing, which had been duly inspected by an agent of the company only a few hours before the accident. It is seen that this authority is also presently irrelevant.

The evidence which tended to prove failure of the crossing signal light to timely flash warning of the approach of the train was stronger for plaintiff than that relating to the engine signals. He testified positively that the light first flashed its warning when he was only about eighteen or twenty feet from the track and, inferably, he then first saw and heard the train. His quick effort to avoid the collision by turning, or as he testified, "whirling", his truck to the left, evidences some degree of care and attention. On the structure which housed the flasher light the following appeared in large and conspicuous letters: "Stop On Red Signal." The damaging admission of defendant's key witness (the towerman) relating to his former operation of the signal has been mentioned.

The rule in this State with respect to railroad crossing signal lights was stated in *Cammer v. Atlantic Coast Line R. Co.,* 214 S. C. 71, 51 S. E. (2d) 174, 177, and followed 'in *Jennings v. McCowan, supra.* From the former the following is taken: "The fact

(failure of crossing lights) is important whether it is alleged to prove negligence of the company or, as here, is relevant upon the question of contributory negligence or contributory wilfulness. * * * The substance of the contention * * * is, that the fact finding body may properly decide that a motorist may rely upon such warning signals and when they are present but not operating may take it as an assurance of safe entry upon the crossing. Automatic warning lights and similar devices at crossings may not be soundly said to relieve one of all care save obedience to their signal. The test is, as usual, the conduct of the average, reasonably prudent person, under the existing conditions. But put there to warn of danger, when the warning ceases a resulting assumption of safety reasonably arises. This will hardly escape the jury, and should not. The circumstance is properly an element of the applicable standard of due care."

In the opinion in the *Crammer case* there was also approvingly quoted the following concerning the effect of failure of crossing signals, irrespective of causative negligence, upon the conduct of a plaintiff when it is tested for contributory negligence or contributory willfullness:

"In perhaps a longer line of decisions it is held that while the failure of a signaling device at a railroad crossing to operate and warn of the approach of a train does not entirely relieve a traveler from his duty to look and listen for an approaching train, nevertheless the traveler may rely to some extent on the apparent safety implied from the silence of the signal, and such silence of the signal is a circumstance to be taken into consideration by the jury on the issue of contributory negligence. The failure to give the signals raises the presumption of safety, but such failure is no more than a circumstance which may properly be taken into consideration in determining the ultimate question of whether he did exercise the degree of care required or not. And, in determining whether he did exercise such care, his conduct at the time is to be judged in the light of such presumption." 44 Am. Jur. 817, sec. 563.

A misconception is contained in defendant's brief regarding the right of one whose injury is proximately caused by a delict in the operation of a crossing signal light. It is asserted, in effect, that contributory negligence is, at all events, a defense to a cause of action based thereon, which is inaccurate. A railroad company which installs such a device owes the duty to operate it with care, which it may fail to perform in such manner that a jury may be warranted in finding wilfulness and wantonness, to which the simple or ordinary contributory negligence of an injured plaintiff would not be a defense. There is no difference in this respect between a delict thereabout and any other act of negligence or wilfulness. Ordinarily, of course, simple contributory negligence of a plaintiff is not a defense to the wilfulness and wantonness of a tortfeasor, if found by the jury upon evidence which reasonably supports the finding. 65 C. J. S., Negligence, § 131, page 751; 38 Am. Jur., 854, Negligence, § 178 S. C. cases in 25 Southeastern Digest, Negligence, Par. 100, page 652, and Supp. In *Cammer v. Atlantic Coast Line R. Co.,* and *Jennings v. McCowan* judgments upon verdicts which included punitive damages for wilfulness and wantonness were sustained on appeal. In both of them, as here, whether the statutory crossing signals were properly given was also an issue. Repeating somewhat, a railroad company may operate, or fail to operate, its crossing lights in such manner as to constitute wilfulness and wantonness and subject it to liability for actual and punitive damages at the suit of one who is injured thereby as a proximate cause even if that one be guilty of ordinary or simple contributory negligence, just as in the case of other delicts.

The result of all of the above is that no error is found in the refusal of the motions for nonsuit, for directed verdict, and for judgment *non obstante,* which leaves for consideration the order on motion for new trial. The disposition of the motion by the trial court has been mentioned. After denial of it in the main the court said, and held, as follows:

"At the same time a review of the evidence in the case convinces me that the verdict as to punitive damages is excessive, indicating prejudice, partiality, bias, and caprice, so as to justify and require a new trial unless the plaintiff or his attorneys, shall in writing, within twenty (20) days hereafter, file with the Clerk of Court for Marlboro County, serving copies on attorneys for the defendant, an agreement to remit Seven Thousand Dollars ($7,000.00) of the verdict relating to punitive damages, reducing the verdict for punitive damages from $20,000.00 to $13,000.00, thereby leaving a verdict and judgment to be entered in favor of the plaintiff in the amounts of $5,000.00 actual damages and $13,000.00 punitive damages, a total of $18,000.00. Should the plaintiff or his attorneys fail to agree to remit as set out above, then a new trial shall be and is hereby ordered."

The twenty-second exception or appeal of the defendant follows:

"The circuit judge erred, it is respectfully submitted, in granting a new trial *nisi,* in and by his order dated July 21, 1951, that is to say, unless the plaintiff would agree to remit $7,000.00 of the verdict relating to punitive damages (which was done); in that, having found as shown by his order that 'the verdict as to punitive damages is excessive, indicating prejudice, partiality, bias, and caprice,' such a tainted verdict cannot be purged by the estimate of the trial judge, for the defendant is manifestly entitled to a fair and impartial trial free from any prejudice, partiality, bias, or caprice; and therefore the circuit judge should have granted a new trial outright."

It is noted that the court found that while punitive damages were recoverable and the issue was properly submitted to the jury, the verdict was excessive and indicated prejudice, partiality, bias and caprice. This conclusion necessitated the granting of a new trial. The earlier authorities were reviewed and the law upon the subject was lucidly laid down in the recent case of *Bowers v. Charleston & W. C. Ry. Co.,* 210

S. C. 367, 42 S. E. (2d) 705. The opinion, by the Chief Justice, may well be quoted at some length, as follows, 210 S. C. at page 375, 42 S. E. (2d) at page 708:

"Where the verdict is deemed to be so excessive as to require that some relief be granted the defendant, either one of two situations may arise, whether the problem is presented in the Circuit Court or in the Supreme Court. In one class of cases the verdict may be deemed excessive, and yet the case may be such as to indicate merely undue liberality on the part of the jury. To reduce the verdict in such a case to proper proportions by the granting of a new trial *nisi* works substantial justice to both parties to the litigation, and promotes the general policy of the courts to bring litigation to an end without unnecessary repetitious trials. In such cases the verdict is not inherently vicious, in the sense that it indicates that the jury was moved by passion or prejudice, rather than by a due regard for the facts of the case and the instructions of the Court. The vice in such a verdict is merely that, in the view of the Court, it is not in accord with accepted judicial standards for measuring damages under the facts of the particular case. As aforestated, it is in this class of cases that the Circuit Court may in its discretion grant a new trial *nisi*. Where it has refused to do so, this Court will not usually interfere, the matter being one within the sound discretion of the Circuit Court. In the other class of cases the verdict is so grossly excessive as to be deemed to be the result of a disregard of the facts and of the instructions of the Court, and to be due to passion and prejudice rather than reason. Where this is found to be the case, it is the verdict itself, rather than merely the amount of the verdict, which is inherently vicious, and the verdict should not be permitted to stand whether the question arises in the Circuit Court or in this Court."

See also, 53 A. L. R. 790 *et seq.* and 66 C. J. S. New Trial, § 209d, page 524.

In the light of the foregoing the conclusion is unavoidable that the trial judge convicted himself of error in the above

quotation from his order, and his refusal to grant a new trial generally. Defendant's quoted exception must be sustained, judgment on the verdict reversed and the case remanded for new trial.

It may not be amiss to call special attention to the fact that some members of the Bar, and we may add perhaps some of the Circuit Judges, are apparently laboring under an erroneous impression as to the *criterion* to be applied in the Circuit Court with respect to verdicts found to be excessive, although we thought we had made the matter clear in the *Bowers case, supra.* In order to warrant a trial Judge in reducing an excessive verdict by granting a new trial *nisi,* it is not necessary that he find that the verdict is "so excessive as to indicate that it was the result of prejudice, caprice or passion, or other considerations not founded on the evidence." That is the yardstick to be applied in this Court in determining whether the verdict should be set aside absolutely. Consequently, our decisions sustaining verdicts claimed to be excessive are of little value to the trial Judge in determining whether a new trial *nisi* should be granted because the verdict indicates undue liberality on the part of the jury. Of course, if the trial Judge concludes that a verdict is so large as to indicate prejudice, caprice or passion, it is his duty to set it aside entirely and not undertake to remedy this condition by granting a new trial *nisi.* But where the verdict is found to be excessive and these considerations do not exist, the trial Judge alone has the power, and with it the responsibility, of setting aside the verdict absolutely, or reducing it by granting a new trial *nisi.*

Reversed and remanded.

FISHBURNE, TAYLOR and OXNER, JJ., concur.

BAKER, C. J., concurs in result.