23794

Lloyd RUSH and Gwendolyn Rush, Respondents/Appellants v. Mary BLAN-
CHARD, M.D., Appellant/Respondent. Lloyd RUSH, as Guardian ad
Litem for Antoine Wendell Rush, a minor, Respondents/ Appellants v.
Mary BLANCHARD, M.D., Appellant/Respondent.

(426 S.E. (2d) 802)

Supreme Court

*Charles E. Carpenter, Jr.* and *Deborah L. Harrison,* both of *Richardson, Plowden, Grier & Howser,* Columbia, and *M.M. Weinberg, Jr.* of *Weinberg, Brown & McDougall,* Sumter, *for appellant/respondent.*

*Edward L. Graham* of *Zeigler and Graham,* Florence, and *Wendell O. Brown* of *Brown & Pridgen,* Kingstree, *for the respondents/appellants.*

Heard Nov. 6, 1992.

Decided Feb. 1, 1993.

Toal, Justice:

The issues raised in this appeal and cross appeal are: (1) did the trial court err in refusing to grant a judgment notwithstanding the verdict (JNOV) motion based on the plaintiff's failure to prove cause in fact, (2) did the trial court err in granting a new trial *nisi remittitur* rather than a new trial absolute, (3) can plaintiffs cross appeal a *remittitur* that they have accepted, and (4) did the trial court err in granting a new trial *nisi remittitur*.

## FACTS

The plaintiffs in this action are Mr. and Ms. Rush and their minor son, Antoine. They brought this action alleging that Dr. Blanchard, Ms. Rush's obstetrician, was negligent in her performance of an amniocentesis on Ms. Rush when she was pregnant with Antoine. The Rushes alleged Dr. Blanchard struck Antoine's right facial nerve with the amniocentesis needle, causing total and permanent paralysis to the right side of the child's face.

Four days prior to her scheduled delivery date, Ms. Rush complained of a decrease in fetal activity. Although the less invasive tests showed an active and healthy fetus, Dr. Blanchard felt an amniocentesis was warranted in light of the mother's complaints and the presence of gestational diabetes. The purpose of the amniocentesis was to procure a sample of amniotic fluid which could be tested to determine fetal lung development. If the child's lungs were sufficiently developed, Dr. Blanchard anticipated performing an early surgical delivery.

The fetal heart monitoring performed immediately prior to the amniocentesis indicated an active baby. The baby was not engaged in the mother's pelvis, and there was no evidence suggesting the baby's position was fixed. Dr. Blanchard, in attempting to perform the amniocentesis, made two separate insertions of the amniocentesis needle into the mother's abdomen several minutes apart. Dr. Blanchard admitted she aimed for the back of the baby's head. Dr. Blanchard also admitted that with each insertion of the needle, she moved the needle around inside the amniotic sac seeking fluid to aspirate. No amniotic fluid was obtained on either attempt but some blood was aspirated. Dr. Blanchard readily admitted she struck the baby with the amniocentesis needle several times

during the procedure. However, she maintained the needle hit the baby on the left side of the head only. Dr. Blanchard used a supra-pubic approach. There was testimony indicating this approach was unwarranted and involved entering the uterus through the lower and thicker portion. Accordingly, Blanchard's ability to feel resistance to the needle was diminished.

There was evidence that the child had two puncture sites on the left side of his face at birth, and it is undisputed that punctures to the left side of the head could not have caused nerve paralysis on the right side. However, there also was testimony that there was another puncture site on the right side of the child's face anterior to his ear. Expert testimony presented at trial indicated that the facial nerve trunk was located in front of the ear and that a puncture to the trunk of this nerve most likely caused the paralysis.

Antoine's paralysis was immediately apparent at his birth. The paralysis distorts Antoine's facial appearance and impairs his speech. Furthermore, due to the paralysis, Antoine is unable to close his right eye. Because the inability to close one's eye results in excessive dryness and heightened possibility of eye injury, Antoine has been required to undergo several surgeries to narrow the opening of the right eye. The surgical procedures have increased Antoine's facial disfigurement. Additionally, Antoine's field of vision in the right eye is restricted. Evidence was presented regarding the emotional impact these defects will have on Antoine as he continues to mature, including an increased risk of depression and suicide.

The case was submitted to the jury, which returned a verdict in the amount of Twenty-Five Thousand Dollars ($25,000) for the parents and Six Hundred Thousand Dollars ($600,000) for Antoine. Dr. Blanchard motioned for a JNOV, a new trial absolute, or, alternatively, a new trial *nisi remittitur*. The trial court denied the JVOV and new trial absolute motions but granted a new trial *nisi remittitur*, reducing Antoine's verdict by Two Hundred and Seventy-Five Thousand Dollars ($275,000). The *remittitur* was accepted by the Rushes.

Dr. Blanchard appeals the denial of the JNOV, and the new trial absolute. The Rushes have entered a cross appeal contesting the *remittitur*.

## LAW/ANALYSIS

### *Cause in Fact*

In a negligence action, the plaintiff must prove proximate cause. *Bramlette v. Charter-Medical-Columbia*, 302 S.C. 68, 393 S.E. (2d) 914 (1990). This requires proof of both causation in fact and legal cause. *Id.* at 72, 393 S.E. (2d) at 916. Causation in fact is proved by establishing the injury would not have occurred "but for" the defendant's negligence. *Id.* In ruling on directed verdict and JNOV motions, the evidence must be considered in the light most favorable to the Rushes. *Graham v. Whitaker*, 282 S.C. 393, 321 S.E. (2d) 40 (1984).

Dr. Blanchard maintains that she struck the baby only twice and that both times the needle punctured the left side of the baby's head. Therefore, she claims that the amniocentesis, whether negligently performed or not, did not cause the paralysis. This argument is without merit. There was abundant evidence from which a reasonable jury could infer that the needle struck both the right and left sides of Antoine's face during the two separate amniocentesis attempts. Even accepting the presence of two puncture sites on the left side of the head, both could have been caused by one amniocentesis attempt, as Dr. Blanchard admitted she moved the needle around once inside the mother's uterus. Furthermore, the evidence supports an inference that the baby could have moved during the procedure. Although Dr. Blanchard maintains she struck the baby only twice, her own expert testified the suprapubic approach used by Dr. Blanchard would lessen her ability to feel any resistance to the needle. Accordingly, we hold the trial court did not err by denying Dr. Blanchard's motion for a JNOV.

### *New Trial Absolute*

A trial court may grant a new trial absolute on the ground that the verdict is excessive or inadequate. *Brabham v. Southern Asphalt Haulers, Inc.*, 223 S.C. 421, 76 S.E. (2d) 301 (1953). The jury's determination of damages, however, is entitled to substantial deference. *Id.* The trial court should grant a new trial based on the excessiveness of the verdict only if the amount is not merely different from that which he would have awarded, but is so grossly excessive

so as to shock the conscience of the court and clearly indicates that the figure reached was the result of caprice, passion, prejudice, partiality, corruption or other improper motives. *Id.* The decision to grant a new trial is left to the sound discretion of the trial court and ordinarily will not be disturbed on appeal. *Vernon v. Atlantic Coast Line R. Co.*, 221 S.C. 376, 70 S.E. (2d) 862 (1952). We can find no abuse of discretion in the denial of a new trial in this case. Antoine has suffered significant facial disfigurement with accompanying speech and vision impairment. There was abundant evidence to support a substantial award of damages.

### New Trial Nisi Remittitur

Ordinarily, the plaintiff who accepts a new trial *nisi remittitur*, when given a choice between a *remittitur* or a new trial, is bound by that election and may not appeal. 4 Am. Jur. (2d) *Appeal and Error* § 245 (1962). The question presented here, however, is whether an exception to the general rule exists which allows a cross appeal by the plaintiff if the defendant has appealed the verdict. This is a novel question in South Carolina. There is a notable split of authority on this issue in other jurisdictions. *See generally* 16 A.L.R. (3d) 1327, *Party's Acceptance of Remittitur in Lower Court As Affecting His Right to Complain in Appellate Court As to Amount of Damages for Personal Injury* (1967). We find the logic employed by those jurisdictions which allow a cross appeal persuasive.

As noted by the Wisconsin Supreme Court in *Plesko v. City of Milwaukee*, 19 Wis. (2d) 210, 120 N.W. (2d) 130 (1963), the underlying objective of a plaintiff in accepting a judgment for a reduced amount is to avoid the delay, expense and uncertainty involved in an appeal or new trial. If the defendant appeals, this objective is negated. *Id.* Accordingly, when the defendant does appeal, it would be inequitable to deny the plaintiff review of the reduction of his damages. To prohibit the plaintiff from appealing the *remittitur* would be to, in effect, hold that the plaintiff is barred from appeal because he consented to the reduced judgment, even though he did not request it, but that the defendant who actually asked for the *remittitur* may appeal because he has not consented to the reduction. The unfairness of such a holding is patent. *Morrison*

*v. Lowe*, 274 Ark. 358, 625 S.W. (2d) 452 (1981).

Dr. Blanchard's reliance on *Hall v. Northwestern R.R. Co. of South Carolina*, 81 S.C. 522, 62 S.E. 848 (1908), is misplaced. In *Hall*, the trial court ordered a new trial *nisi remittitur*. However, the order was conditioned on the defendant's tendering the reduced amount within thirty days or the new trial motion would be deemed denied. In effect, for the defendant to have the benefit of the *remittitur*, which he was entitled to, he was required to forego his right to appeal. In *Hall*, we held a new trial *nisi remittitur* could not be conditioned with such onerous terms. *Id.* The instant case is distinguishable. Allowing the plaintiff to cross appeal a *remittitur* does not deprive the defendant of his right to appeal, nor his right to a remittitur; if it is warranted. Permitting a cross appeal merely puts the parties on a level playing field as to the risks and benefits of an appeal. Accordingly, we hold the plaintiff may cross appeal a *remittitur* in spite of his acceptance of the amount prior to the defendant's appeal.

Nevertheless, we affirm the trial court's *remittitur* in this case. The trial court has wide discretionary power to reduce the amount of a verdict which in his or her judgment is excessive. *Daniel v. Sharpe Const. Co.*, 270 S.C. 687, 244 S.E. (2d) 312 (1978). The decision of the trial judge to reduce the verdict will not be disturbed unless it clearly appears that the exercise of discretion was controlled by a manifest error of law. *Id.* The trial judge who heard the evidence and is more familiar with the evidentiary atmosphere at trial possesses a better-informed view of the damages than this Court. *Id.* Accordingly, great deference is given to the trial judge, especially in the area of intangible elements of damages, as were presented in this case. *Id.* Therefore, we affirm the trial court's order of a new trial *nisi remittitur*.

Affirmed.

HARWELL, C.J., and CHANDLER, FINNEY and MOORE, JJ., concur.