THIS OPINION HAS NO PRECEDENTIAL VALUE.  IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 239(d)(2), SCACR.
THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
Terry Cartrette Tindall,       
Respondent,
 
 
 

v.

 
 
 
H&S Homes, LLC, d/b/a Horton Homes of Conway; and Pete Hughes, Jr., Individually and as an Agent for H&S Homes, LLC, d/b/a Horton Homes of Conway, Horton Homes, Inc., and Bombardier Capital, Inc.,       
Defendants,
Of Whom, H&S Homes, LLC is,       
Appellant.
 
 
 

Appeal From Horry County
Steven H. John, Circuit Court Judge

Unpublished Opinion No. 2005-UP-535
Heard September 13, 2005  Filed October 3, 2003   

AFFIRMED

 
 
 
J. Boone Aiken, III, of Florence, and James B. Richardson, Jr., of Columbia, for Appellant.
Peter L. Hearn, Sr, of Conway, and Richard M. Lovelace, Jr., of Conway, for Respondent.
 
 
 

PER CURIAM:  Terry Tindall brought this action against H&S Homes, LLC, Pete Hughes, Jr., and Horton Homes, Inc. for breach of contract, fraud, negligence, and breach of express and implied warranty.  The jury awarded Tindall actual and punitive damages on her negligence cause of action against H&S.  H&S appeals, arguing the trial court should have granted its motions for directed verdict, JNOV, and a new trial.  We affirm.
FACTS
Horton Homes, Inc., of Edenton Georgia, is a mobile home manufacturer that principally owns and operates approximately thirty mobile home dealerships in the Southeast.  H&S Homes, LLC, of Conway, is a Horton Homes dealership.  Pete Hughes, Jr., began working as H&Ss general manager in September of 1998.  Hughes testified that H&S received a damaged 1997 model mobile home some time prior to the time he began his employment.
Terry Tindall is a disabled and dyslexic forty-four-year-old single mother with minimal education.  In March of 1999, Tindall and her teenage daughter visited H&S Homes on several occasions to purchase a double-wide mobile home.  Hughes showed Tindall several homes, including the damaged 1997 model, which Tindall alleges Hughes told her was a 1998 model.  On March 5, 1999, Tindall signed a purchase agreement to buy the alleged 1998 model home for $53,210.  The purchase agreement did not include the model year, but it did indicate the home was new.
H&S allowed Tindall and her
daughter to move into the home prior to the April 16, 1999 closing.  During the closing, Tindall learned the home was a 1997 model.  The closing attorney delayed the closing in response to Tindalls concern regarding the model year, but Tindall completed the purchase because H&S sold her trade-in, a single-wide mobile home, and the purchaser of the trade-in had already moved in to the home prior to the closing.  Tindall testified she felt stuck because she didnt have anywhere to go.
Tindalls neighbor testified the walls looked like somebody took a hammer and just beat holes in it.  The home leaked around the windows, under the sinks, behind the refrigerator, and in the bathrooms.  As a result, the exterior walls, floors, and cabinets rotted and the vinyl floor became discolored.  The leaks also created mold and mildew, resulting in a bad odor throughout the home.  The commode was replaced three times, the doors were unlevel and would not close properly, and the molding around the front door was three quarters of an inch off the wall.  A carpenter hired by Tindall testified the molding was not even touching the wall to seal the draft . . . around the doorway.  The ceiling fan fell out of the ceiling, and the chandelier was damaged to the extent it had to be taken apart and put back together.  Tindall testified the linoleum in the bathroom, kitchen, and her daughters room had cuts in it from when H&S set the house up.  Tindall also testified the kitchen smell[ed] like sewer and when she hired a plumber to determine the cause of the smell, the plumber found one of the plumbing vents did not have a vent cap to prevent the sewer gas from backing up the line.  Additionally, the brick underpinning on the house was falling down because there was not enough mortar in the brickwork.  Incidentally, a neighbor witnessed H&Ss work crew drinking liquor as the crew set up Tindalls brick underpinning. 
Tindall contacted H&S on several occasions asking H&S to repair her home.  H&S attempted to repair some of the problems, but many of the repairs were unsuccessful or inadequate.  Tindall testified concerning several of H&Ss attempts to repair including the following:  (1) H&S tried to fix the leak under the bathroom sink, but when they would come out they would . . . screw that little screw . . . where the sink is and it would split all the way up, so it kept leaking; (2) H&S replaced the first commode and tried to put caulking on it, silicon, to stop it from leaking, and it leaked around the commode pipes, and it turned the floor dark;  (3) H&S put clear caulking on the ceiling cracks, but the clear caulking could not be painted; (4) H&S replaced the back door because of water damage, but did not attempt to repair the leak that caused the damage; (5) H&S attempted to repair the doors, but the doors remained unlevel and never shut properly; (6) H&S patched the torn linoleum floors in the kitchen, bathroom, and bedroom with silicone instead of replacing the floors with vinyl; and (7) H&S placed screws in the bottoms of leaking windows, but the screws blocked the weep holes, prevented drainage, and caused the windows to rust out.  H&S did not even attempt to repair several of the problems, including repair or replacement of furniture that was damaged during the transport of the home.
Tindall brought this action against H&S Homes, Horton Homes, and Pete Hughes, Jr., for negligence, fraud, breach of contract, and breach of express and implied warranty.  At trial, the defendants moved for a directed verdict on all causes of action.  The trial judge granted the motion for negligence as to Horton Homes, but denied the motion on all grounds as to H&S Homes.  At the close of the testimony, the defendants renewed the motions.  Following the motions, the court conducted a charge conference.  During the conference, the trial judge determined the jury could choose only one theory of liability.  Tindall elected to forgo the warranty causes of action to simplify matters for the jury.  The court, therefore, instructed the jury on the following causes of action: (1) breach of contract as to H&S Homes and Horton Homes; (2) fraud and deceit as to H&S Homes and Pete Hughes, Jr.; and (3) negligence as to H&S Homes.  In addition, the court submitted the issue of punitive damages to the jury on the theory of fraud and deceit and on the theory of negligence.
The jury found for the defendants on the breach of contract action and on the fraud and deceit action.  The jury found for Tindall on the theory of negligence.  The jury awarded $95,000 actual damages and $300,000 punitive damages.  H&S Homes moved for a new trial, a new trial nisi remittitur, and a JNOV.  The trial judge granted the nisi remittitur, reduced the verdict for actual damages to $43,210, and directed Tindalls counsel to notify the court within ten days whether Tindall would accept the reduced verdict.  The trial judge indicated if Tindall refused to accept the new verdict, the trial judge would grant a new trial absolute.
H&S Homes moved to strike the punitive damages award arguing, what the jury had the opportunity to find here was ordinary negligence and ordinary negligence in this state will not support a punitive damage award.  The trial judge responded that he would review the punitive damage award if Tindall accepted the new trial nisi remittitur.  Tindall accepted the new trial nisi remittitur within the ten-day time limit, and the judge entered his order of judgment in the reduced amount.  The parties then submitted briefs to the trial judge on the issue of punitive damages.  After conducting a review pursuant to Gamble v. Stevenson, 305 S.C. 104, 406 S.E.2d 350 (1991), the judge declined to reduce the amount of the punitive damages award in a June 28, 2004 order.  This appeal followed.
LAW/ ANALYSIS
I.  Directed Verdict and JNOV
H&S argues the trial court erred by denying its motions for directed verdict and JNOV because there was no evidence that H&S negligently breached any tort duty owed to Tindall.  This argument is not preserved for review.
On appeal, H&S alleges that Tindall was attempting to convert an action for breach of warranty and for fraud, both contract actions, into a negligence action, a tort action.[1]  However, at trial, H&S did not assert that Tindall was trying to convert a contract action into a tort.  In its motion for directed verdict, H&S simply argued that Tindalls negligence allegation was not supported by evidence as pled:

[Tindalls] allegations are that Horton, H&S LLC was willfully negligent in the transportation, installation of the home violating applicable housing standards for such transportation and installation.  I dont believe theres been any evidence about what standards for transportation [and] installation there are, if there happen to be such standards.  There just hasnt been any evidence in this case and Im just saying that the negligence count not only falls with regard to Horton Homes[,] it also falls as pled with regard to H&S. 

Therefore, H&Ss motion for a directed verdict was not sufficient to preserve the issue on appeal.  See State v. Bailey, 298 S.C. 1, 5, 377 S.E.2d 581, 584 (1989) (stating a party cannot argue one theory at trial and a different theory on appeal); State v. Fletcher,  363 S.C. 221, 257, 609 S.E.2d 572, 591 (Ct. App. 2005) (To be preserved for appellate review, an objection should be sufficiently specific to bring into focus the precise nature of the alleged error.).
II.  New Trial Absolute
H&S argues the trial judge erred by not granting a new trial absolute because the verdict for actual damages exceeded the largest amount supported by the evidence.  We disagree.
If the amount of the verdict is grossly inadequate or excessive so as to be the result of passion, caprice, prejudice, or some other influence outside the evidence, the trial judge must grant a new trial absolute. ONeal v. Bowles, 314 S.C. 525, 527, 431 S.E.2d 555, 556 (1993).  Also, if the verdict conclusively shows the jury disregarded the courts instructions or else capriciously fixed damages without reference to the evidence, then it is error for the court to refuse a motion for new trial.  Carrigg v. Blue, 283 S.C. 494, 500, 323 S.E.2d 787, 790 (Ct. App. 1984).  The trial judges failure to grant a new trial absolute in such situations amounts to an abuse of discretion and on appeal this court will grant a new trial absolute.  Weir v. Citicorp Natl Servs. Inc., 312 S.C. 511, 518, 435 S.E.2d 864, 868-69 (1993).
In this case, Tindall paid $53,210 and traded in a single-wide mobile home valued at $8,100 to purchase the mobile home from H&S.  Additionally, the record contains testimony that the cost to repair the home would exceed the value of the home.  Taking all of these factors into consideration, we find that the jurys verdict of $95,000 in actual damages was not grossly excessive so as to be the result of passion, caprice, prejudice, or some other influence outside the evidence.  
Furthermore, H&S moved for a new trial nisi remittitur in addition to moving for a new trial absolute, which the court granted.  [T]he import of a new trial nisi additur or nisi remittitur is a suggestion on the part of the [trial] judge of a settlement figure. Stroud v. Stroud, 299 S.C. 394, 397, 385 S.E.2d 205, 206 (Ct. App. 1989) (overruled on other grounds).  The trial court has wide discretionary power to reduce the amount of a verdict which in his or her judgment is excessive.  Rush v. Blanchard, 310 S.C. 375, 381, 426 S.E.2d 802, 805 (1993).  On appeal, the trial judges decision to reduce the verdict will not be disturbed unless it clearly appears that the exercise of discretion was controlled by a manifest error of law.  Id.  The trial judges decision is given great deference because the judge, who heard the evidence and is more familiar with the evidentiary atmosphere at trial[,] possesses a better-informed view of the damages than this [c]ourt.  Id.  
Additionally, if the party opposing the motion for a new trial nisi remittitur agrees to pay the amount suggested by the trial court, the opposing party cannot thereafter complain.  Stroud, 299 S.C. at 397, 385 S.E.2d at 206.  Having asked for the relief and having received it, the moving party is likewise bound.  Estes v. Grav,  319 S.C. 551, 554, 462 S.E.2d 561, 562 (Ct. App. 1995).  Because H&S moved for the remittitur and received it, H&S is bound by the judgment.  

 III.  Punitive Damages  
H&S argues the trial judge erred by submitting the issue of punitive damages to the jury because there was no evidence that its conduct was reckless, willful, or wanton.  We disagree.
The issue of punitive damages must be submitted to the jury if more than one reasonable inference can be drawn from the evidence as to whether the defendants behavior was reckless, willful, or wanton.  Graham v. Whitaker, 282 S.C. 393, 398, 321 S.E.2d 40, 43 (1984).  To receive punitive damages, the plaintiff has the burden of proving by clear and convincing evidence that the defendants misconduct was willful, wanton, or in reckless disregard of the plaintiffs rights.  Scott v. Porter, 340 S.C. 158, 172, 530 S.E.2d 389, 396 (Ct. App. 2000).  A conscious failure to exercise due care constitutes willfulness.  Hawkins v. Pathology Assocs. of Greenville, P.A.,  330 S.C. 92, 110, 498 S.E.2d 395, 405 (Ct. App. 1998). A tort is reckless, willful, or wanton if committed in such a manner or under such circumstances that an ordinary person would have been conscious of it as an invasion of the plaintiffs rights.  Id.  Although an award of punitive damages demands more than gross negligence, negligence may be so gross as to amount to recklessness, and when it does, it ceases to be mere negligence and assumes very much the nature of willfulness.  Hicks v. McCandlish,  221 S.C. 410, 415, 70 S.E.2d 629, 631 (1952).  
Tindall presented evidence that could be interpreted as reckless, willful, and wanton conduct by H&S.  There was testimony that H&S threw siding in the mobile home during its transport, tearing furniture and destroying the interior walls, H&Ss work crew drank liquor as they set up the brick underpinning of Tindalls home, and H&S sent Tindall a box of hinges rather than fix the doors.  Thus, the trial judge did not err in submitting the issue of punitive damages to the jury.
AFFIRMED. 
BEATTY, SHORT, JJ., and CURETON, A.J., concur. 

[1] Although H&S did not mention the economic loss rule in its brief, it is essentially what they are arguing.  The economic loss rule assists in determining whether contract or tort theories are applicable to a given case.  Kennedy v. Columbia Lumber & Mfg. Co., Inc., 299 S.C. 335, 345, 384 S.E.2d 730, 736 (1989).  While some states have used the economic loss rule to prohibit tort actions for purely economic damages, South Carolina has recognized limited tort actions where the damages were purely economic losses.  Id. at 346, 384 S.E.2d at 737 (holding that a cause of action in negligence will be available where a builder has violated a legal duty, no matter the type of resulting damage); Beachwalk Villas Condo. Assn, Inc. v. Martin, 305 S.C. 144, 147, 406 S.E.2d 372, 374 (1991) (extending the Kennedy decision to architects).  Our supreme court has determined that the question of whether the plaintiff may maintain an action in tort for purely economic loss turns on the determination of the source of the duty plaintiff claims the defendant owed.  The court held that a plaintiff might maintain an action in tort for purely economic loss if the breach of duty arises independently of any contract duties.  Tommy L. Griffin Plumbing & Heating Co. v. Jordan, Jones & Goulding, Inc., 320 S.C. 49, 55, 463 S.E.2d 85, 89 (1995) (holding that design professionals can be liable in tort for purely economic loss when the relationship between the design professional and the plaintiff is such that the design professional owes a professional duty to the plaintiff arising separate and distinct from any contractual duties between the parties or with third parties).  However, [a] breach of duty which arises under the provisions of a contract between the parties must be redressed under contract, and a tort action will not lie.  Tommy L. Griffin Plumbing & Heating Co., 320 S.C. at 56, 463 S.E.2d at 88.