775 S.E.2d 411

Matthew S. McALHANEY, Respondent,

v.

Richard K. McELVEEN a/k/a Richard K. McElveen, Sr., Individually and d/b/a Battery Creek Marina, The Great Pumpkin, LLC, Linda McElveen, Richard K. McElveen, Jr., and Billy Joe Byrd, Defendants,

Of Whom Richard K. McElveen a/k/a Richard K. McElveen, Sr. is Appellant.

Appellate Case No. 2010–167969.
No. 5328.

Court of Appeals of South Carolina.

Heard April 23, 2015.
Filed July 15, 2015.
Rehearing Denied Aug. 20, 2015.

---

8.  Sir Winston S. Churchill, *The Story of the Malakand Field Force* 36 (Arc Manor 2008) (1898).

300

Blake Alexander Hewitt and John S. Nichols, Bluestein Nichols Thompson & Delgado, LLC, of Columbia; and Scott Wayne Lee, Law Offices of Scott W. Lee, PA, of Beaufort, for Appellant.

Robert V. Mathison, Jr., Mathison & Mathison, of Hilton Head Island, for Respondent.

FEW, C.J.

Richard K. McElveen, Sr. appeals the trial court's denial of his motion for a new trial, arguing the trial court erred in ruling the jury's award of punitive damages against him was not so grossly excessive as to shock the conscience of the court. We affirm.

## I. Facts and Procedural History

This appeal arose from a custody dispute between McElveen and his former daughter-in-law—Molly McCullers McElveen (McCullers)—over her two children, who are McElveen's grandchildren. When the custody dispute began, Matthew McAlhaney was dating McCullers. In an attempt to gain an advantage in the custody dispute, McElveen made allegations that McAlhaney was a drug addict, a child abuser, and a child molester. McElveen wrote a letter to Governor Mark Sanford alleging McAlhaney was a drug addict and had abused the children, and McElveen and his wife met with an investigator from the Beaufort County Sheriff's Office and accused McAlhaney of sexually abusing the children. Based on McElveen's accusations, the sheriff's office arrested McAlhaney, and he spent a night in jail before being released. Several weeks later, McElveen emailed the investigator and alleged that "numerous folks ... say [McAlhaney] is gay, a deviant or capable of anything."

After McAlhaney's arrest, McElveen told his neighbor that McAlhaney had been arrested for molesting one of the children. According to the neighbor, McElveen "seemed very thrilled, almost beaming about the fact that ... McAlhaney had been arrested." In addition, McElveen told a furniture salesperson—who testified she lived near McAlhaney's mother and had never met McElveen—that McAlhaney supplied drugs to McCullers, abused one or both of the children, and was a "deviant soul." The solicitor's office investigated McElveen's allegations, but ultimately dismissed the charges against McAlhaney.

McAlhaney filed a lawsuit against McElveen for libel, slander, and abuse of process. A jury found in favor of McAlhaney and awarded him actual damages of $1,000 for libel, $61,000 for slander, and $25,000 for abuse of process. In

addition, the jury awarded punitive damages of $3.25 million on the libel cause of action and $3.25 million on the slander cause of action. McElveen moved for a new trial absolute, claiming "the verdicts were so excessive ... as to shock the conscience of the court and clearly indicate that the figure reached was the result of passion, caprice, prejudice, partiality, corruption, or some other improper motives," or—in the alternative—for a new trial nisi remittitur on the ground that the verdicts were "unduly excessive."

The trial court denied the motion for a new trial. However, the court conducted a post-trial review of the punitive damages award and reduced it to a total of $375,000.

## II.  Law and Analysis

McElveen raises three arguments on appeal. First, he argues the trial court erred by not granting him a new trial based on the size of the punitive damages award. He also raises two issues regarding the trial court's charge to the jury.

### A.  Punitive Damages

The primary issue before this court is whether the award of punitive damages was so grossly excessive that the trial court abused its discretion in not granting a new trial absolute. In presenting this issue, McElveen does not rely on the due process-based duty of a trial court to conduct a post-trial review of an award of punitive damages.[1] *See Mitchell v. Fortis Ins. Co.*, 385 S.C. 570, 583–87, 686 S.E.2d 176, 183–85 (2009) (noting courts must conduct a post-trial review of a punitive damages award to determine whether the award violates the defendant's due process rights). Rather, McElveen relies on the state-law procedural principle that the trial court should order a new trial absolute when the verdict is "so grossly excessive so as to shock the conscience of the court and clearly indicates that the figure reached was the result of caprice, passion, prejudice, partiality, corruption or other improper motives." *Rush v. Blanchard*, 310 S.C. 375, 379–80, 426 S.E.2d 802, 805 (1993). McElveen argues it was unnecessary for the trial court to engage in the due process-based

---

1. Neither party has appealed the trial court's decision to reduce the punitive damages award to $375,000.

review of the award because "the amount of the jury's punitive damages award is so large that the verdict could not properly be remitted," and thus the only appropriate remedy is a new trial.

■ Focusing our review, therefore, on the trial court's decision denying the motion for new trial absolute under state law, we may not reverse the decision unless the trial court committed an abuse of discretion. *See Rush,* 310 S.C. at 380, 426 S.E.2d at 805 (providing the "decision to grant a new trial is left to the sound discretion of the trial court and ordinarily will not be disturbed on appeal," and affirming the trial court's denial of a new trial absolute because the circuit court did not abuse its discretion); *see also RRR, Inc. v. Toggas,* 378 S.C. 174, 182–83, 662 S.E.2d 438, 442 (Ct.App.2008) (finding the trial court's decision to deny a motion for a new trial absolute on the basis of excessive punitive damages was within its discretion), *aff'd,* 381 S.C. 490, 674 S.E.2d 170 (2009). We note that this standard of review is different from the de novo standard we use to review a punitive damages award under the due process clause. *See Mitchell,* 385 S.C. at 583, 686 S.E.2d at 183 (holding an appellate court must conduct its due process review of a punitive damages award de novo).

The trial court conducted a thorough post-trial hearing on McElveen's motions regarding the punitive damages award. Discussing the evidence, the court noted "the jury found egregious conduct" and "they decided that Mr. McElveen ... was malicious and wicked and ... deserved to be punished." The court stated "the jury fe[lt] like [McElveen] accuse[d] someone—for ulterior motives[—]for being a child molester and ha[d] them incarcerated" and "you need to sustain the most powerful message delivered that that's bad conduct." The court found,

> The evidence was there to show [McElveen] engaged in a long series of efforts .... McAlhaney was only brought into it so that McElveen ... could get custody of the grand kids and because of that he engaged in all these procedures that ended up with [McAlhaney] being incarcerated and locked up and being accused of committing heinous crimes.

The trial court stated, "Plaintiff[ is] obviously harmed when he's incarcerated and accused of being a child molester.

Locked up. Small town. It's in the paper. Everybody knows and once you are accused of that it just stays with you and you are stigmatized for life, even if you are subsequently exonerated."

In its order denying McElveen's motion, the trial court found "the jury could have easily found the harm was the result of intentional malice and trickery and that [McElveen] sought to discredit [McAlhaney] in order to prevail in a contentious custody dispute." The trial court stated "evidence was ... presented that the conduct was not an isolated incident, but rather involved repeated occasions ranging from a letter to the governor to defaming [McAlhaney] as a child molester to a furniture salesperson." The court found McAlhaney presented evidence "from which the jury could and did find that McElveen['s] conduct was intentional, deliberate and malicious and was thus reprehensible." The court concluded its order by finding its due process review required the punitive damages be reduced:

[T]he punitive verdicts ... on the libel and slander causes of action ... clearly indicate that they are so inflated as to [be] violative of principles of fundamental fairness and due process.

However, the court ruled a new trial was not warranted under the state-law procedural principle upon which McElveen relies in this appeal:

I find that the punitive awards are not so grossly excessive that they clearly mandate the granting of a new trial absolute, and do not cross the threshold between an unduly liberal verdict versus a grossly excessive verdict.

■ We find the evidence in the record supports the trial court's analysis and decision. First, we are not convinced McElveen is correct that the jury intended to award $6.5 million in punitive damages. During the post-trial hearing, the trial court indicated the punitive damages verdict could be interpreted as a total of $3.25 million. In a conversation with counsel, the court noted McElveen's net worth "approached two million, not even quite two million." Referring to the punitive damages award, the trial court then stated, "[$]3.25 million he's in bankruptcy tomorrow. So the award was too— while his ability to pay is just a factor, he can't pay it so it has

to be reduced." McElveen's counsel then stated, "Actually, there[ are] two 3.25 million dollar punitive verdicts." The trial court responded, "Well, that depends on how you read it. I told you all to send declaration form."

It is not clear what the trial court meant by "declaration form." What is clear, however, is the trial court recognized the amount of the punitive damages verdict was ambiguous from the verdict form.[2] At one other point in the post-trial proceedings, the trial court stated it "cut" the punitive damages verdict "from three million." [3]

The two punitive damages verdicts against McElveen were for libel and slander. On the facts of this case, the libelous and slanderous conduct was intertwined as part of the same plan the jury found McElveen executed to gain a strategic advantage in his custody dispute by falsely accusing McAlhaney of heinous crimes. It is possible the jury intended to award only $3.25 million in punitive damages, but wrote the same amount in both of the places on the verdict form the court provided. Apparently, neither side requested the trial court ask the jury before it was discharged about its intent as to the total amount of punitive damages.[4]

This court has recently recognized the time to clarify ambiguities in a jury verdict is before the jury is discharged. *See Allegro, Inc. v. Scully,* 409 S.C. 392, 419–20 n. 10, 762 S.E.2d 54, 69 n. 10 (Ct.App.2014) ("If a jury verdict form is ambiguous or unclear, the jury should be returned to the jury room in order to clarify or conform the verdict to its intent before the jury is excused."), *cert. granted,* (Apr. 22, 2015). In this case, the uncertainty of the jury's intent as to the amount of total punitive damages is significant. If the jury considered McElveen's conduct as one course of action and intended to make

---

2. In its final order, however, the trial court stated, "I find that the punitive damages awards should be reduced from $6,500,000 to $375,000."

3. The trial court made this statement during a hearing to reconstruct the record of the last day of trial, conducted while the appeal was pending pursuant to an order of this court.

4. The portion of the trial in which the verdict was published is not in our record because the court reporter was unable to produce a transcript from the final day of trial.

one punitive damages award of $3.25 million, the ratio of actual damages—$87,000—to punitives is far more reasonable than if the jury had intended to award $3.25 million on the libel cause of action alone. In the latter scenario, the ratio of punitive to actual damages is 3,250 to 1. In the former scenario, the ratio—37.36 to 1—is still high under the due process clause, but far less likely to shock the conscience of the court and require a new trial absolute under state law.

Turning to McElveen's conduct, the purpose of punitive damages is "punishment" for wrongful conduct, and punitive damages "are allowed . . . as a warning and example to deter the wrongdoer and others from committing like offenses in the future." *Laird v. Nationwide Ins. Co.*, 243 S.C. 388, 396, 134 S.E.2d 206, 210 (1964) (citation omitted). McElveen's conduct was not simply wrongful; it was atrocious and intolerable. *Cf. Ford v. Hutson*, 276 S.C. 157, 162, 276 S.E.2d 776, 778 (1981) (defining the tort of "outrage" as "conduct . . . so 'extreme and outrageous' as to exceed 'all possible bounds of decency' and must be regarded as 'atrocious, and utterly intolerable in a civilized community' " (citation omitted)). The record supports the trial court's statement that McElveen's conduct occurred on "repeated occasions," and our review of the record indicates it went on for at least one year. We agree with the trial court's finding that the parties presented evidence "from which the jury could and did find that McElveen['s] . . . conduct was intentional, deliberate and malicious and was thus reprehensible." We must view the facts in the light most favorable to the nonmoving party—McAlhaney. *See Toggas,* 378 S.C. at 182–83, 662 S.E.2d at 442 (providing that when reviewing a trial court's denial of a motion for a new trial, this court "must consider the testimony and reasonable inferences to be drawn therefrom in the light most favorable to the nonmoving party"). In this light, the jury found McElveen maliciously lied on repeated occasions by accusing McAlhaney—a man he knew to be innocent—of the most heinous crimes, and he did so with disregard for the consequences to McAlhaney, McCullers, and even to McElveen's grandchildren. Moreover, he did all of this for the purpose of improperly gaining a strategic advantage in, and illegally influencing the outcome of, family court proceedings regarding the welfare of the children. Finally, he did it for his personal

benefit—not for the good of the children. As the trial court so aptly understated, we "need to sustain th[is] most powerful message ... that that's bad conduct." We hold the trial court did not abuse its discretion in denying McElveen's motion for a new trial.

## B. Other Issues

McElveen raises two additional issues, as to which we affirm pursuant to Rule 220(b), SCACR, and the following authorities:

1. As to whether the trial court improperly charged the jury regarding statutory immunity: *See Clark v. Cantrell*, 339 S.C. 369, 389–90, 529 S.E.2d 528, 539 (2000) ("An appellate court will not reverse the trial court's decision regarding jury instructions unless the trial court abused its discretion.... When instructing the jury, the trial court is required to charge only principles of law that apply to the issues raised in the pleadings and developed by the evidence in support of those issues."); *Berberich v. Jack*, 392 S.C. 278, 285, 709 S.E.2d 607, 611 (2011) ("An erroneous jury instruction will not result in reversal unless it causes prejudice to the appealing party."); *Fountain v. First Reliance Bank*, 398 S.C. 434, 444, 730 S.E.2d 305, 310 (2012) ("One who publishes defamatory matter concerning another is not liable for the publication if (1) the matter is published upon an occasion that makes it conditionally privileged, and (2) the privilege is not abused.... An abuse of the privilege occurs in one of two situations: (1) a statement made in good faith that goes beyond the scope of what is reasonable under the duties and interests involved or (2) a statement made in reckless disregard of the victim's rights.").

2. As to whether the trial court improperly charged the jury regarding punitive damages: Rule 51, SCRCP ("No party may assign as error the giving or the failure to give an instruction unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds for his objection."); *Clark v. S.C. Dep't of Pub. Safety*, 353 S.C. 291, 308, 578 S.E.2d 16, 24 (Ct.App.2002) (finding a jury charge issue unpreserved be-

cause the appellant failed to object to the charge), *aff'd,* 362 S.C. 377, 608 S.E.2d 573 (2005).

**AFFIRMED.**

HUFF and WILLIAMS, JJ., concur.